WILLIAM A. STUART ET AL. *v.* RICHARD M.
FREIBERG
(AC 33813)

DiPentima, C. J., and Beach and Bishop, Js.

Argued September 18, 2012—officially released May 21, 2013

*Sandra J. Akoury*, for the appellants (plaintiffs).

*James A. Fulton*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiffs, William A. Stuart and Jonathan Stuart, appeal from the summary judgment rendered by the trial court in favor of the defendant, Richard M. Freiberg, and from the court's subsequent denial of their motion to reargue. On appeal, the plaintiffs claim that the court improperly granted the defendant's motion for summary judgment[1] on the plaintiffs' claims sounding in fraud, negligent misrepresentation, accounting malpractice and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] We reverse the summary judgment as to the fraud, negligent misrepresentation

---

[1] The plaintiffs also claim that the court improperly denied their motion to reargue the defendant's motion for summary judgment. We do not address this claim in view of our conclusion that the court improperly granted summary judgment.

[2] In their brief, the plaintiffs also claim that the court erroneously allowed the defendant to file a second motion to strike. At oral argument before this court, the plaintiffs' attorney conceded that the issue was not reviewable by this court. See Practice Book § 10-44; *Bross* v. *Hillside Acres, Inc.*, 92 Conn. App. 773, 777–78, 887 A.2d 420 (2006) ("The filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading. . . . The filing of the amended pleading is a withdrawal of the original pleading." [Internal quotation marks omitted.]). We therefore do not address the issue.

and accounting malpractice counts, and affirm the judgment as to the CUTPA count.

As a prelude to the issues presented in this appeal, a historical review of this dispute is appropriate, as the context is relevant to our determination of the issues at hand. The trail of disputes between the parties, including, at times, collateral actors, has been long and tortuous.

The plaintiffs, William A. Stuart and Jonathan Stuart, and Kenneth J. Stuart, Jr. (Stuart, Jr.), are brothers.[3] In 1991, their father, Kenneth J. Stuart, Sr. (Stuart, Sr.), and his wife, Katherine Stuart, executed wills and caused the creation of a trust known as "The Kenneth J. Stuart Living Trust" (trust) in which Stuart, Sr., and Stuart, Jr., were named as co-trustees with the further provision that upon Stuart, Sr.'s death, Stuart, Jr., would be the sole trustee and executor of Stuart, Sr.'s estate. See *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031 (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010). Stuart, Sr.'s will provided that should he survive his wife, the principal of the trust would be distributed in equal shares to his three sons. Id. At the time of trust creation, Stuart, Sr., owned approximately $2 million in securities and cash, an interest in real estate, valuable antique furniture and valuable art work, including several famous works by Norman Rockwell. Id. Most of

---

[3] This factual recitation is contained in a memorandum of decision issued by the court, *Adams, J.*, on June 28, 2004, in the matter of *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031 (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010). Appellate courts may take judicial notice of files of the trial court in the same or other cases. See *St. Paul's Flax Hill Cooperative* v. *Johnson*, 124 Conn. App. 728, 739 n.10, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011).

these assets were placed in the trust during Stuart, Sr.'s lifetime. Id. Katherine Stuart died on March 21, 1992, and Stuart, Sr., died eleven months later, on February 17, 1993. Id. In the months preceding his death, Stuart, Sr., completed a number of transactions that affected his estate. Id. In November, 1992, Stuart, Sr., and Stuart, Jr., without the knowledge of either William A. Stuart or Jonathan Stuart, formed the Stuart & Sons Limited Partnership (Stuart & Sons) with Stuart, Sr., and Stuart, Jr., as general partners and the Norman Rockwell Museum at Stockbridge, Massachusetts, as a junior partner. Id. Shortly thereafter, nearly all of Stuart, Sr.'s assets, including the art collection, were transferred to Stuart & Sons. Id. Subsequent to Stuart, Sr.'s death, Stuart, Jr., engaged in numerous transactions on behalf of Stuart & Sons, including the purchase of real estate, the transfer of property from Stuart & Sons to himself and to his wife, Deborah Christman Stuart, and the commingling of Stuart & Sons assets with his own. Id.

On December 17, 1993, William A. Stuart and Jonathan Stuart brought a seven count action against Stuart, Jr., as trustee and as a general partner of Stuart & Sons in which they alleged that Stuart, Jr., exercised undue influence over Stuart, Sr., in conjunction with the creation of the trust, the formation and funding of Stuart & Sons and related financial activities, and that Stuart, Sr., lacked the mental capacity to know and understand those transactions. The complaint alleged that Stuart, Jr., breached his fiduciary duties to the trust in numerous ways. In a third revised complaint, dated March 10, 2003, William A. Stuart and Jonathan Stuart added Deborah Christman Stuart as a defendant. Specifically, the complaint alleged that Stuart, Jr., committed statutory theft and a fraudulent transfer of real estate from Stuart & Sons to his wife, Deborah Christman Stuart. It further alleged that Stuart, Jr., Deborah Christman

Stuart and their jointly owned business, Christman Stuart Interiors, LLC, were unjustly enriched by misappropriation of certain assets from Stuart & Sons. Finally, the complaint alleged that a number of these alleged activities violated CUTPA.

As relief, William A. Stuart and Jonathan Stuart sought an injunction preventing Stuart, Jr., as general partner of Stuart & Sons, from spending, wasting or encumbering assets of Stuart & Sons and preventing Stuart, Jr., as trustee, from the same in regard to trust assets. They sought, as well, an order imposing a constructive trust on the assets of Stuart & Sons, and they asked the court to set aside conveyances made by Stuart, Jr., to Stuart & Sons. The case came to trial nearly nine years later[4] and was decided by memorandum of decision dated June 28, 2004, following a trial of several weeks.[5] The court, *Adams, J.*, found largely for the plaintiffs. Id. The court determined that Stuart, Sr., was not competent to engage in the transactions that formed Stuart & Sons and to transfer trust assets to Stuart & Sons and, further, that Stuart, Jr., had exercised undue influence over Stuart, Sr. Id. The court, therefore, declared null and void the creation of Stuart & Sons

---

[4] While the record before us provides no explicit reason for the passage of more than a decade between the filing of the 1993 complaint and the court's memorandum of decision, we are aware, from a postjudgment memorandum of decision in the same matter that, at some point during the litigation, Stuart, Jr., filed a bankruptcy petition, which, the court noted, caused an automatic stay of all proceedings in this case under the Bankruptcy Code, 11 U.S.C. § 362. *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031 (July 6, 2009).

[5] In its memorandum of decision dated June 28, 2004, the trial court, *Adams, J.*, noted: "The case was initially commenced in 1993; it involved many lengthy discovery disputes, a hearing on a temporary injunction application, the appointment of a special master assigned inter alia, to take possession of voluminous partnership files and to oversee the partnership affairs. A trial to the court of nearly eight weeks in length occurred in the autumn of 2003." *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 368.

and ordered that all of its assets be transferred to the estate of Stuart, Sr.[6] Id. The court also found that Stuart, Jr., had violated his fiduciary duty and the Connecticut Uniform Prudent Investor Act,[7] and had been guilty of statutory theft as to certain assets. Id. Finally, the court found that Christman Stuart Interiors, LLC, had violated CUTPA but dismissed the CUTPA claims against Stuart, Jr., and Deborah Christman Stuart. Id. The court, accordingly, awarded monetary damages in favor of the estate against Stuart, Jr., in the amount of $2,375,528, including interest.[8] Id. On the unjust enrichment claims,

---

[6] See *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 392. It appears, as well, that while this action was pending, the court appointed a special master "to take possession of voluminous partnership files and to oversee the partnership affairs." Id., 368. The special master was charged, as well, to "take control of certain funds generated from prior asset sales by [Stuart, Jr.]" and was given the duty of "reviewing all expenses for partnership payment and forwarding his recommendation for payment or rejection to the court." *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031 (July 6, 2009). At a later date, the court approved the report of the special master and ordered the remaining funds transferred to attorney Sandra Breck, who, by that time, had been appointed administratrix of the estate by the Norwalk Probate Court. Id.

[7] See General Statutes § 45a-541 et seq.

[8] With respect to the court's award of interest, the court's observation in its memorandum of decision is noteworthy. "Because of the many transactions that occurred over more than a decade giving rise to the breach of fiduciary duty damages, e.g. the personal expenses paid over the years, the diversion of funds in 1997 and 1998 and the contributions of Stuart, Jr., which began in 1992 and were made sporadically to 2002, the court does not have the facility to calculate how much was owed at any specific time. . . . However, the amounts that the court has concluded to be breach of fiduciary duty damages grew to its present amount in fairly regular increments over the years and the court determines that it is fair and equitable to divide that figure into twelfths and assess interest on one twelfth beginning at the end of 1991, on two twelfths at the end of 1992 and continuing on to the whole amount, $1,062,332.25 at the end of 2002 and thereafter." (Citation omitted.) *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 393. The import of this statement is that the court found that Stuart, Jr., had breached his fiduciary duty for several years while the litigation was pending, and while Freiberg was serving as his accountant and as the accountant for the several entities he had created and to which estate funds had been transferred.

the court ordered Christman Stuart Interiors, LLC, to pay the sum of $60,539, including interest to the estate and, last, the court ordered accounting fees in the amount of $180,000.[9] Id.

The next litigation of note on the parties' journey of conflict was a lawsuit filed by Jonathan Stuart and William A. Stuart against Peter G. Snyder as attorney for Stuart, Jr., and for the various entities created by Stuart, Jr. See *Stuart* v. *Snyder*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-06-5001106 (August 25, 2009). In a multicount complaint dated March 23, 2006, Jonathan Stuart and William A. Stuart alleged that Snyder, in conjunction with the estate, was guilty of fraud, negligent misrepresentation, negligence, breach of fiduciary duty, civil conspiracy, unjust enrichment and fraudulent concealment. Id. In response, Snyder filed a motion for summary judgment on the ground that the statute of limitations had run before the commencement of the action. Id. Agreeing with Snyder, the court, *Pavia, J.*, rendered summary judgment on August 25, 2009, a decision later affirmed by this court. See *Stuart* v. *Snyder*, 125 Conn. App. 506, 8 A.3d 1126 (2010), cert. denied, 300 Conn. 921, 14 A.3d 1005 (2011). We now turn to the facts of the present case.

On April 1, 2004, the plaintiffs commenced the present action against the defendant. The complaint contained four counts: fraud, negligent misrepresentation, accounting malpractice and a violation of CUTPA. In the fraud count, the plaintiffs alleged that the defendant knew of Stuart, Jr.'s mishandling of Stuart, Sr.'s estate assets, aided Stuart, Jr., in his mismanagement by creating adjusted journal entries and mischaracterizing Stuart, Jr.'s personal expenses, prepared misleading

---

[9] The record reveals that the trial court's decision was affirmed in part on appeal to this court, then reversed in part on appeal to our Supreme Court. See *Stuart* v. *Stuart*, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010).

transaction summaries and compilation reports and provided the plaintiffs with incorrect compilation reports. The plaintiffs further alleged that the defendant knew or should have known that the plaintiffs would rely on his representations, and that they did rely on them to their detriment. In the negligent misrepresentation count, the plaintiffs incorporated the allegations of the fraud claim and alleged further that the defendant failed to exercise reasonable care and competence in his communication of accounting information and concealed certain transactions from the plaintiffs. In the accounting malpractice count, the plaintiffs incorporated the allegations of the fraud and negligent misrepresentation counts and further alleged that the defendant "failed to provide [accounting information] in good faith, objectively, independently, and in a manner in keeping with generally acceptable levels of expertise and professional standards of the industry." Finally, in the CUTPA count, the plaintiffs alleged that the defendant's conduct as the accountant for Stuart, Sr.'s estate was "immoral, oppressive, unscrupulous and caused substantial injury and an ascertainable loss to the [p]laintiffs . . . ."

The defendant moved to strike the complaint on the ground of legal insufficiency, and the court, *J. R. Downey, J.*, granted the motion. The plaintiffs appealed from that judgment, citing Practice Book § 10-41.[10] This court agreed with the plaintiffs and reversed the judgment and remanded the case with direction to deny the defendant's motion. See *Stuart* v. *Freiberg*, 102 Conn. App. 857, 863, 927 A.2d 343 (2007).

On July 23, 2008, the plaintiffs filed an amended complaint, continuing to allege the same four counts. The

[10] Practice Book § 10-41 provides in relevant part: "Each motion to strike raising any of the claims of legal insufficiency . . . shall separately set forth each such claim of insufficiency and shall distinctly specify the reason or reasons for each such claimed insufficiency."

amended complaint added specific allegations that the defendant regularly prepared reports on behalf of the estate that he presented as accurately stating the estate's financial status and that he knew that Stuart, Jr., was using estate funds for personal expenses. The plaintiffs alleged further that every year, from 1994 until 2000, the defendant reviewed and adjusted journal entries in the estate books that would characterize Stuart, Jr.'s personal expenses as either "commissions earned or loans." (Internal quotation marks omitted.)

On May 3, 2011, the defendant filed a motion for summary judgment as to the amended complaint. Primarily, the defendant argued that the plaintiffs did not rely on the defendant's actions and sustained no injuries as a result of the defendant's actions. Further, the defendant argued that he did not owe the plaintiffs a duty of care, that he did not cause the plaintiffs' injury and that the plaintiffs' allegations are not within the scope of CUTPA because they do not involve entrepreneurial elements of the defendant's practice. The plaintiffs filed an objection with affidavits, arguing that issues of fact existed as to all of their claims.

In its July 15, 2011 memorandum of decision, the court, *Tobin, J.*, granted the defendant's motion as to each count of the plaintiffs' amended complaint. As to the count of fraud, the court stated: "In the 1993 action against [Stuart, Jr.], the plaintiffs' first prayer for relief requested that the court issue '[a] temporary and permanent injunction preventing . . . [Stuart, Jr.] . . . [f]rom spending, selling, conveying, giving, transferring, hypothecating, converting, encumbering or wasting assets of the [t]rust created by [Stuart, Sr.] without the consent of the [p]laintiff beneficiaries of the [t]rust.' The plaintiffs also asked the court to impose a constructive trust for their benefit regarding the assets that [Stuart, Jr.] was allegedly misappropriating. Accordingly, the undisputed facts indicate that the plaintiffs had already

brought a legal action to remove [Stuart, Jr.] as the fiduciary of their father's estate before the defendant was hired to do accounting work for the estate. Given this chain of events, it is impossible to see how the plaintiffs could have relied on the defendant's alleged fraudulent misrepresentations in the manner that is alleged in the amended complaint."

As to the count of negligent misrepresentation, the court determined that the plaintiffs did not provide "any admissible evidence that would create a genuine issue of material fact regarding whether they relied on the defendant's alleged negligent misrepresentations . . . ." As to the accounting malpractice claim, the court concluded that "the plaintiffs were not the intended beneficiaries of the work that culminated in the drafting of [the defendant's] reports," and "that the defendant did not owe a legal duty to the plaintiffs such that [the plaintiffs] can allege an accounting malpractice claim . . . ." The court also determined that the plaintiffs failed to raise any issue of material fact with respect to injuries suffered as a result of the defendant's conduct. Finally, as to the CUTPA count, the court concluded that the plaintiffs "offered no evidence that could raise a genuine issue of material fact as to whether the defendant's alleged conduct implicated the entrepreneurial aspects of his accounting practice."

Thereafter, the plaintiffs filed a motion to reargue pursuant to Practice Book § 11-11. Attached to the plaintiffs' motion was a copy of the petition they claimed they had filed in 2002 in the Norwalk Probate Court seeking Stuart, Jr.'s removal as fiduciary of Stuart, Sr.'s estate. In a memorandum of decision, the court stated the following: "Attached to the motion to reargue are two unauthenticated exhibits which the plaintiffs invite the court to consider. To the extent that these exhibits are relevant to the plaintiffs' opposition to the motion for summary judgment, the plaintiffs had an obligation

to file them within the time set forth in Practice Book § 17-45. One of the documents is a complaint, dated December 17, 1993, filed by the plaintiffs in an action they brought against their brother [Stuart, Jr.]. The second is [a] motion filed by the plaintiffs on February 12, 2002, in the Norwalk Probate Court. These documents were obviously in the possession of the plaintiffs and might have been submitted to the court in opposition to the motion for summary judgment. The plaintiffs' motion to reargue fails to explain why these materials were not so submitted." The court concluded, without a hearing, that the motion to reargue "is without merit and, accordingly, that motion is denied."[11] This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiffs first claim that the court improperly granted the defendant's motion for summary judgment as to their fraud, negligent misrepresentation, and accounting malpractice counts. We agree as to all of these counts.

We begin by setting forth our standard of review. "Summary judgment rulings present questions of law; accordingly, [o]ur review of the . . . decision to grant the defendant's motion for summary judgment is plenary. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter

---

[11] In his brief, the defendant responsibly acknowledges that the December, 1993 complaint in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, was, in fact, before the court, as he had appended it to his motion for summary judgment. As to the Norwalk Probate Court filing, the trial court noted that the probate filing was unauthenticated. Although the court has the authority to take judicial notice of Probate Court files; see *In re Justice V.*, 111 Conn. App. 500, 502 n.2, 959 A.2d 1063 (2008), cert. denied, 290 Conn. 911, 964 A.2d 545 (2009); we cannot find it an abuse of discretion for the court to not take cognizance of an unauthenticated document.

of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . In order for a motion for summary judgment to be granted properly, the moving party must demonstrate that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition [must] . . . be on evidence which a jury would not be at liberty to disbelieve and . . . where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the [summary judgment]." (Citations omitted; internal quotation marks omitted.) *Farrell* v. *Twenty-First Century Ins. Co.*, 301 Conn. 657, 661–62, 21 A.3d 816 (2011). "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012).

In assessing the granting of a motion for summary judgment, we must "decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view

the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A material fact is a fact which will make a difference in the result of the case. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Citation omitted; internal quotation marks omitted.) *Vestuti* v. *Miller*, 124 Conn. App. 138, 142, 3 A.3d 1046 (2010). Mindful of those principles, we turn to the issues presented for our review.

A

In their challenge to the summary judgment on the fraud and negligent misrepresentation counts, the plaintiffs primarily focus on the court's determination that no genuine issues of material fact exist as to reliance, an element of both causes of action. They claim that the proof presented to the court sufficiently raised issues of fact as to reliance. We agree.[12]

---

[12] In response to the plaintiffs' claims, the defendant presents eight alternate grounds for affirmance: (1) the plaintiffs did not timely file their opposition papers; (2) there was no evidence that the defendant's representations were made for the purpose of inducing the plaintiffs to act; (3) there was no evidence that the plaintiffs sustained injury as a result of the defendant's representations; (4) the plaintiffs did not properly plead their fraud count; (5) there was no evidence that the plaintiffs sustained injury as a result of the defendant's allegedly negligent representations; (6) the plaintiffs did not properly plead their negligent misrepresentation count; (7) there was no evidence that the plaintiffs sustained injury as a result of the defendant's alleged malpractice; and (8) the plaintiffs did not properly plead their CUTPA count. We reject the defendant's first alternate ground that asserts that the plaintiffs did not timely file their opposition papers in accordance with Practice Book § 17-45, as we agree with the court's determination under *Martinez* v. *Zovich*, 87 Conn. App. 766, 769 n.3, 867 A.2d 149, cert. denied, 274 Conn. 908, 876 A.2d 1202 (2005), that while it had the power to render summary judgment on procedural grounds due to a late filing, it could instead choose to consider the motion on its merits because the defendant had not demonstrated that the plaintiffs' delay was actually prejudicial to

In its decision, the court concluded that the proof before it was "sufficient to raise issues of material fact as to whether financial statements and reports prepared by the defendant were false," that "it could be inferred from the evidence produced by the plaintiffs that the defendant knew that the statements and reports were false," and that "having been engaged by [Stuart, Jr.] to prepare statements and reports for the estate entrusted to the fiduciary, the defendant should have known that persons having a beneficial interest in the estate might rely upon the information set forth in the statements and reports." The court also determined, however, that "it is impossible to see how the plaintiffs could have relied on the defendant's alleged fraudulent misrepresentations in the manner that is alleged in the amended complaint," and that "the plaintiffs have . . . failed to put forth any evidence indicating that they relied on the alleged misrepresentations made by the defendant."

To establish a case of fraud, a party must prove by clear and convincing evidence that "(1) . . . a false representation of fact was made; (2) . . . the party making the representation knew it to be false; (3) . . . the representation was made to induce action by the other party; and (4) . . . *the other party did so act to her detriment*." (Emphasis added; internal quotation marks omitted.) *Warner* v. *Brochendorff*, 136 Conn. App. 24, 33 n.9, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012). To prove negligent misrepresentation, a party must show that "(1) . . . the defendant

his defense. We are unpersuaded by the defendant's alternate grounds two through seven, fully addressed as part of the plaintiffs' claims on appeal; see part I A and B of this opinion; as we do not believe any of them provides adequate support for the entry of summary judgment. Last, the defendant's final alternate ground for affirmance is based on the plaintiffs' CUTPA count, on which we have affirmed the trial court's decision; therefore, we need not address this argument.

made a misrepresentation of fact (2) . . . the defendant knew or should have known was false, and (3) *the plaintiff reasonably relied on the misrepresentation,* and (4) [the plaintiff] suffered pecuniary harm as a result." (Emphasis added; internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership,* 134 Conn. App. 203, 211 n.4, 38 A.3d 215, cert. granted on other grounds, 304 Conn. 923, 41 A.3d 663 (2012).

The plaintiffs challenge the court's determination that there were no genuine issues of material fact as to the element of reliance. Specifically, the plaintiffs argue that they presented sufficient proof of their delay in seeking the removal of Stuart, Jr., as executor and in proceeding with their claims against him in Superior Court because of their reliance on the defendant's misrepresentations. As noted, however, the court determined, on the basis of its review of the historical record, that the plaintiffs could not prove they delayed in their attempt to remove Stuart, Jr., as executor of the estate because they had commenced litigation to remove Stuart, Jr., as executor and trustee in 1993, the year before the defendant herein was retained by Stuart, Jr., Thus, the court concluded, the plaintiffs could not possibly have relied on the defendant's subsequent conduct to delay an action they already had commenced. From our review of the record, however, and, in particular, the record of the litigation in *Stuart* v. *Stuart,* supra, 37 Conn. L. Rptr. 367, it is evident that the court did not appreciate the nature and focus of this earlier litigation as well as the trial court's findings regarding the conduct of Stuart, Jr., and, by implication, the defendant, in the years between the commencement of the litigation and the date of the court's memorandum of decision.[13] See

---

[13] Judge Adams' memorandum of decision in *Stuart* v. *Stuart,* supra, 37 Conn. L. Rptr. 367, was submitted to the court by the defendant, as it was appended to his motion for summary judgment.

id. In sum, and contrary to the court's conclusion, the plaintiffs did *not* seek to have Stuart, Jr., removed as executor or as trustee of Stuart, Sr.'s estate in the 1993 litigation. Rather, they sought an injunction against Stuart, Jr., as general partner of Stuart & Sons and as trustee, the imposition of a constructive trust on the assets of Stuart & Sons and an order setting aside conveyances made by Stuart, Jr., into Stuart & Sons on the basis of their overarching claims that Stuart, Jr., improperly had transferred assets from the estate to Stuart & Sons. Additionally, the court's detailed and fact-laden memorandum of decision in *Stuart* v. *Stuart*, supra, 367, makes clear the court's finding that the defendant provided accounting assistance to Stuart, Jr., while that lengthy litigation was pending and that, during the litigation, improper acts were committed by Stuart, Jr., with the assistance of the defendant, to the detriment of the beneficiaries of Stuart, Sr.'s estate.[14]

---

[14] For example, in its memorandum of decision, the court, *Adams, J.,* noted: "Stuart, Jr.'s record keeping was haphazard at best. John Slade, an accountant hired by Stuart, Jr., to assist with the books and records of the Trust and partnership from early 1992 to 1994, told Stuart, Jr., that he had to be more organized in keeping records. . . . The plaintiffs' expert, John Dempsey, a [certified public accountant], found that the lack of record keeping was notable and that he had never seen a case where the books were so incomplete and funds so commingled. . . . Dempsey also described the work of Richard Freiberg, a [certified public accountant] who worked for Stuart, Jr., from 1994 to 2001, as designed to hide, rather than disclose the truth. . . . Furthermore, Stuart, Jr., failed to produce the annual accountings required by the Stuart, Sr., Trust. Although certain partial information was given out from time to time it was incomplete and unverified. The court was never shown a complete Trust accounting for any period of time." (Citations omitted.) *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 378.

Elsewhere in its memorandum of decision the court noted: "[T]he regularity and extent that Stuart, Jr., directed the use of partnership funds for his personal benefit is staggering. This course of action was explicitly articulated by both Richard Freiberg and Stuart, Jr. In a letter dated February 26, 1998, Freiberg advised New Milford Savings Bank . . . that Stuart, Jr., received from the Stuart, Sr., Estate and Trust from Stuart & Sons and from Eldred Wheeler [of Wilton, LLC] non taxable funds related to executive perks, deferred compensation and loans. . . . About two weeks later, Freiberg elaborated: Basically all of [Stuart, Jr.'s] living expenses are paid from the

We agree, of course, that because the record does not reflect that the plaintiffs sought to remove Stuart, Jr., as executor or trustee in the 1993 litigation and that, rather, they appeared to tolerate Stuart, Jr., continuing in that role for some period of time during the *Stuart v. Stuart* litigation, the issue of their reliance on the defendant's accounting conduct likely will be significantly contested at trial. As noted, however, the question before us is not whether the plaintiffs are entitled to recover against the defendant but, rather, whether they are entitled to present their claims to a fact finder for adjudication.[15] In sum, our thorough review of this record provides ample support for our conclusion that the court had no evidence before it that the plaintiffs had sought to remove Stuart, Jr., as a fiduciary in 1993 and, to the contrary, the court had significant evidence that, for whatever reasons, the plaintiffs appear to have tolerated their brother continuing as executor and trustee for several years after they commenced the 1993 litigation. Whether they were misled into believing the financial reports prepared by the defendant and provided during the litigation and were content that the assets previously transferred from the estate were adequately safeguarded by the intervention of the court remains to be determined in a fact-based hearing.

above referenced entities [Estate, Trust, partnership, Wheeler] and are charged or reclassified at the end of each year. These amounts have been in excess of $90,000 per annum." (Citation omitted; internal quotation marks omitted.) Id., 379.

[15] The plaintiffs' lack of alacrity in this regard did not go unnoticed by the court, *Adams, J.*, in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367. In responding to William A. Stuart's and Jonathan Stuart's statutory theft claims, the court noted their substantial delay in seeking to remove Stuart, Jr., as fiduciary. The court commented: "Finally, an additional factor to be considered is the somewhat languorous approach of William and Jonathan Stuart to their brother's actions. William and Jonathan were aware of Stuart, Jr.'s spending what they considered to be their father's money on himself early on. . . . Yet while a suit was filed in 1993 no further action was taken to stop the spending until an injunction proceeding in 2002." (Citation omitted.) Id., 389.

In support of his motion for summary judgment, the defendant points to Jonathan Stuart's deposition testimony that as of "at least April 26, 2001," he had never met the defendant and that he never hired the defendant to act as his own accountant. When asked if the defendant concealed information from him, Jonathan Stuart stated, "[h]ow would I know if he concealed things? . . . I don't know." The defendant also points to deposition testimony from William A. Stuart that he, too, had never met the defendant, that he had only spoken with the defendant once, on the telephone, and that he did not think Jonathan Stuart had ever met the defendant. William A. Stuart stated that he personally did not receive bills from the defendant, but that the estate did, and that in their one conversation, he and the defendant spoke regarding the terms of the defendant's engagement as the estate's accountant. He noted that, when asked, the defendant was "unable or unwilling" to keep track of the money Stuart, Jr., spent on himself. None of these factual claims, however, gives lie to the plaintiffs' claims of reliance. The defendant, and the court as well, failed to place the parties' relationship in context. The record makes it clear that Judge Adams, in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, found that throughout the defendant's work on behalf of Stuart, Jr., and the estate or estate related entities, the plaintiffs and the defendant's principal, Stuart, Jr., were in litigation.[16] Under these circumstances, it is of no legal significance that the plaintiffs had no direct contact with the defendant. In sum, the record available to the court, particularly Judge Adams' decision in *Stuart* v. *Stuart*, supra, 367, provides sufficient counterbalance to the defendant's filings in support of his motion for summary judgment to render resolution of the issue of reliance to the adjudication of fact finders and not to summary disposition by the court short of trial.

---

[16] See footnote 14 of this opinion.

The court, therefore, improperly rendered summary judgment as to the counts alleging fraud and negligent misrepresentation.

## B

In disposing of the plaintiffs' malpractice claim against the defendant, the court concluded that there were two bases on which to render summary judgment. The court held that the defendant did not owe a duty of care to the plaintiffs and that, even if such a duty existed, the plaintiffs failed to demonstrate that they relied on the defendant's conduct to their detriment. We disagree.

"There are four essential elements to a malpractice action. . . . (1) *the defendant must have a duty to conform to a particular standard of conduct for the plaintiff's protection*; (2) the defendant must have failed to measure up to that standard; (3) *the plaintiff must suffer actual injury*; and (4) the defendant's conduct must be the cause of the plaintiff's injury." (Emphasis added.) *LaBieniec* v. *Baker*, 11 Conn. App. 199, 202–203, 526 A.2d 1341 (1987).

The plaintiffs argue that the court erred in determining that there was no issue of fact as to whether the defendant owed the plaintiffs a duty. "Whether a duty of care exists is a question of law to be decided by the court." *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). "Duty is a legal conclusion about relationships between individuals, made after the fact . . . . The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." (Internal quotation marks omitted.) Id., 827. "[C]ourts generally now permit actions for professional malpractice without reference to privity, so long as the plaintiff is the intended or foreseeable beneficiary of the professional's undertaking . . . ." (Citations omitted.) *Mozzochi*

v. *Beck*, 204 Conn. 490, 499, 529 A.2d 171 (1987). How-
ever, "the conclusion that a particular injury to a partic-
ular plaintiff or class of plaintiffs possibly is foreseeable
does not, in itself, create a duty of care." *Waters* v.
*Autuori*, supra, 827.

The record revealed no proof of privity between the
plaintiffs and the defendant.[17] Nor do the plaintiffs argue
privity in their briefs. The question for this court, then,
is whether the plaintiffs presented sufficient evidence
to raise a genuine issue that the plaintiffs were the
intended beneficiaries of the defendant's work for Stu-
art, Jr., in his capacity as the executor of the estate and
the trustee of the trust. The defendant attested, in an
affidavit, that he was retained by Stuart, Jr.; he attested
further that his work developed to include the "comple-
tion of tax returns and financial statement for Stuart,
Jr.," in his capacity as the executor of the estate, trustee
of the trust and member of Stuart & Sons. The defendant
maintained that his work was for Stuart, Jr., and his
attorney alone; he attested that he sent "all the account-
ings, returns and statements" only to Stuart, Jr., and
his attorney.[18]

---

[17] Jonathan Stuart testified in his deposition that as of "at least April 26,
2001," he had never met the defendant and that he never hired the defendant
to act as his own accountant. William A. Stuart also testified in his deposition
that he had never met the defendant and that he had only spoken with
the defendant once, on the telephone. Further, he attested that all of the
defendant's accountings were addressed to the estate, not to either of the
plaintiffs personally.

[18] At trial after remand, evidence may develop regarding services per-
formed by the defendant for Stuart, Jr., and the estate entities controlled
by Stuart, Jr., in regard to the then pending litigation between the plaintiffs
and Stuart, Jr., including documents prepared by the defendant and provided
to the plaintiffs during the course of discovery. We are mindful, in this
regard, that the court, *Adams, J.*, in *Stuart* v. *Stuart*, supra, 37 Conn. L.
Rptr. 393, awarded the plaintiffs substantial accounting fees required to
untangle the various financial activities of Stuart, Jr., while the defendant
served as his accountant.

Specifically, as to the accounting fees sought for the plaintiffs' expert,
John Dempsey, the court noted: "[The] [p]laintiff presented evidence that
the fees of Dempsey and his firm . . . for investigation, preparation of

William A. Stuart testified, however, that although he had only spoken to the defendant once on the telephone, the conversation had concerned the terms of the defendant's engagement as the accountant for the estate. Further, in September, 2001, the defendant prepared a statement of cash and owners' equity of the estate, with a cover letter addressed to the "beneficiaries of [the] estate of Kenneth J. Stuart Sr. & Affiliates." Attached to the letter were the accounting and financial statements for the year ending in 2000, and the notes explaining the statements.

The court, *Tobin, J.*, noted that it was "conceivable" that the plaintiffs reviewed the defendant's reports, but held that the plaintiffs were not the intended beneficiaries of the defendant's "work on the estate of Kenneth Stuart, Sr." Our Supreme Court has held that "actions for professional malpractice without reference to privity [are permitted], so long as the plaintiff is the intended or foreseeable beneficiary of the professional's undertaking . . . ." (Citations omitted.) *Mozzochi* v. *Beck*, supra, 204 Conn. 499. Together, the telephone conversation between William A. Stuart and the defendant and the mailing addressed to the beneficiaries of Stuart, Sr.'s estate sufficiently raise a genuine issue as to whether the plaintiffs were the intended beneficiaries of the defendant's services and therefore whether the defendant owed the plaintiffs a duty.

reports and trial testimony amounted to a little less than $200,000 through the end of October, 2003. . . . Dempsey testified on eight separate trial days. His work was essential to the plaintiffs' ability to unravel the sporadic and confusing records of the Estates Trust, and partnership. In a sense, Dempsey provided at least a partial accounting of the Trust and Estate which had never been supplied by Stuart, Jr. . . . This court concludes that Dempsey's fees are a proper element of the plaintiffs' damages in connection with the breach of fiduciary claims. These costs would not have been incurred except for [Stuart, Jr.'s] breach of fiduciary duty, particularly the commingling of funds and the lack of adequate records." (Citation omitted.) Id.

Our analysis is not completed, however, by the determination that there is a genuine issue of fact as to whether the defendant's duty of care extended to the plaintiffs. Despite the existence of a genuine issue as to the issue of duty, further analysis is warranted because the court rendered summary judgment as to this count on a second ground. In addition to its conclusion regarding the question of duty, the court concluded that the plaintiffs "failed to raise any genuine issues of material fact regarding whether they suffered injuries as a result of the defendant's conduct." Citing to the amended complaint, the court recognized the plaintiffs' claims of delay in pursuing (1) Stuart, Jr.'s removal as fiduciary of the estate and (2) their claims in Superior Court against Stuart, Jr., as the only injuries alleged by the plaintiffs. On the basis of its earlier determination that there was no genuine issue of fact as to the plaintiffs' reliance on the defendant, the court concluded that without such reliance, "the plaintiffs cannot demonstrate that the defendant's conduct caused their supposed injuries." As we have noted, however, we believe the question of reliance is not amenable to summary judgment because it is fact bound and the facts regarding this issue are in dispute. In disposing of the complaint in this regard, however, the court appears additionally to have determined that the plaintiffs did not sufficiently allege that they suffered any harm as a result of the defendant's alleged breach. Indeed, the defendant claims, in brief, that the failure of the plaintiffs to adequately articulate their claims of detriment stands as an alternate ground to support summary judgment. We do not agree.

In reaching the conclusion that the plaintiffs have not demonstrated detrimental reliance, the court primarily focused on the issue of reliance. Having concluded that the court incorrectly determined that the plaintiffs

could not demonstrate reliance on the defendant's conduct, we turn now to whether the plaintiffs sufficiently alleged harm. We believe a fair reading of the record supports the conclusion that the plaintiffs have sufficiently alleged that they suffered losses as a consequence of the defendant's alleged malpractice to leave the issue of detriment to a fact-bound inquiry. Reaching a contrary conclusion, the court appears not to have considered the plaintiffs' claim that as a consequence of the defendant's conduct, as alleged, the estate of which they are beneficiaries was diminished in value and they expended substantial funds attempting to unravel documents, regarding the estate, prepared by the defendant.

In their reply brief, the plaintiffs cite two affidavits filed in opposition to the summary judgment.[19] In one affidavit, William A. Stuart avers that, in addition to delaying their action against and removal of Stuart, Jr., he and Jonathan Stuart "suffered personal financial losses . . . by both the reduction of the [e]state's assets and by the monies we expended to unravel the complex and deceitful accounting reports [the defendant] had prepared." The plaintiffs also refer to the affidavit of the forensic accountant, John D. Dempsey, in which he states that he believed the defendant did not produce many documents, some of which precluded him from establishing additional damages in the trial of *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367. These disputed factual claims, if proven, would implicate the plaintiffs' entitlement to damages from the defendant. As such, they are material to the plaintiffs' claims.

---

[19] Although we ordinarily do not address arguments raised for the first time in the reply brief; see *Selene Finance, L.P.* v. *Tornatore*, 137 Conn. App. 130, 134 n.3, 46 A.3d 1070, cert. denied, 307 Conn. 908, 53 A.3d 223 (2012); we consider the plaintiffs' argument here because the defendant raised the issue of these affidavits as an alternate ground for affirmance in his brief.

Accordingly, we believe the court incorrectly determined that the plaintiffs did not sufficiently demonstrate that they suffered harm as a result of the defendant's alleged malpractice. Therefore, because the plaintiffs demonstrated the existence of genuine issues of material fact with respect to both duty and damages, the court improperly granted summary judgment on the malpractice count.

## II

In the plaintiffs' final claim as to the rendering of summary judgment, they contend that the court erred in determining that the plaintiffs failed to show a genuine issue of material fact that the defendant's alleged actions fall under CUTPA. We are not persuaded.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). Although neither our Supreme Court nor this court has yet determined the parameters of CUTPA in the context of accounting malpractice, trial courts in Connecticut have found CUTPA inapplicable for accountants, except in cases relating to the commercial or entrepreneurial aspects of an accounting practice. See *Baker* v. *Brodeur*, Superior Court, judicial district of Middlesex, Docket No. CV-12-5008115 (August 21, 2012) (holding that complaint did not sufficiently plead CUTPA violation where allegations about defendant's misconduct did not relate to defendant's business practice as accountant but rather were, in substance, "claims of poor judgment"); *Advest Group, Inc.* v. *Arthur Andersen, LLP*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-97-0571417 (July 28, 1998) (22 Conn. L. Rptr. 520) ("the same limited exemption from CUTPA that applies to the practices of law and medicine should apply to the practice of

accounting, that is, only claims arising out of the commercial or entrepreneurial aspects of accounting should fall under CUTPA"). We are not bound by these cases, but we find their logic, derived from our Supreme Court's decision in *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 34, 699 A.2d 964 (1997) ("[a]lthough physicians and other health care providers are subject to CUTPA, only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by CUTPA") persuasive.

The plaintiffs have not offered evidence sufficient to show a genuine issue of material fact that the defendant's alleged actions fall under CUTPA. As in *Baker*, the plaintiffs here have only alleged negligence and poor judgment. The plaintiffs allege that the defendant's "conduct, including without limitation his billing practices" falls within CUTPA, but do not support their claim with further facts. The plaintiffs rely on their allegations of fraud, negligent misrepresentation and accounting malpractice to support their CUTPA claim, but the evidence presented in these claims is not under the purview of CUTPA. Beyond their mention of his billing practices, none of the evidence presented in support of the plaintiffs' fraud, negligent misrepresentation or accounting malpractice claims alleges unfair and deceptive practices as related to entrepreneurial conduct.

The plaintiffs misconstrue the meaning of "entrepreneurial" to be any action performed by the defendant. It is not so broad. Our Supreme Court defined entrepreneurial as "aspects of practice, such as the solicitation of business and billing practices, as opposed to claims directed at the competence of and strategy employed by the" defendant; (internal quotation marks omitted) *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 35–36; and noted that "professional negligence—that

is, malpractice—does not fall under CUTPA." Id., 34. Thus, to succeed, the plaintiffs had to demonstrate that some element of the defendant's business practices was deceptive or unfair. The plaintiffs allege fraudulent billing practices in name only, as their claim is supported with evidence of alleged poor decision making and withholding of information underlying their other legal claims. In sum, the plaintiffs' claims in this regard are not pointed, in the main, at the defendant's billing or other business related practices, as they must be in order to establish a CUTPA claim pursuant to *Baker* and *Haynes*. The plaintiffs do not, therefore, sufficiently allege a CUTPA violation. See id.; *New Milford Savings Bank* v. *Roina*, 38 Conn. App. 240, 245, 659 A.2d 1226 (allegations alone insufficient to create issue of fact), cert. denied, 235 Conn. 915, 665 A.2d 609 (1995).

For the foregoing reason, we conclude that the court properly granted the defendant's motion for summary judgment as to the plaintiffs' CUTPA claim.

The judgment is reversed only as to the counts of the amended complaint alleging fraud, negligent misrepresentation and accounting malpractice and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion BEACH, J., concurred.

DiPENTIMA, C. J., dissenting in part. In large part, I agree with the well reasoned opinion of the majority. The majority concludes, however, that there is a genuine issue of material fact as to the reliance by the plaintiffs, William A. Stuart and Jonathan Stuart, on the defendant, Richard Freiberg, because "contrary to the [trial] court's conclusion, the plaintiffs did not seek to have [their brother, Kenneth J. Stuart, Jr. (Stuart, Jr.)] removed as executor or as trustee of [the] estate [of their late father, Kenneth J. Stuart, Sr. (Stuart, Sr.)] in

the 1993 litigation [between the Stuart brothers and others]. Rather, they sought an injunction against Stuart, Jr., as general partner of [the] Stuart & Sons [Limited Partnership (Stuart & Sons)] and as trustee, the imposition of a constructive trust on the assets of Stuart & Sons and an order setting aside conveyances made by Stuart, Jr., into Stuart & Sons on the basis of their overarching claims that Stuart, Jr., improperly had transferred assets from the estate to Stuart & Sons." I disagree with this conclusion because, on the basis of the record before us, there are uncontroverted facts that show the plaintiffs had sufficient information regarding Kenneth Stuart, Jr.'s misbehavior so as not to support a claim of reasonable reliance on the defendant's actions resulting in a delay in removing Kenneth Stuart, Jr. Through the papers accompanying his motion for summary judgment, the defendant has convinced me that there is no genuine issue of material fact as to the plaintiffs' lack of reasonable reliance or induced action to their detriment in support of their counts of fraud and negligent misrepresentation. I further conclude that the plaintiffs have not substantiated their claim to the contrary. I would, therefore, affirm the court's decision as to those counts of the plaintiffs' amended complaint.

I agree with the facts as set out by the majority; my disagreement lies in the application of those facts as they relate to the defendant's motion for summary judgment.

I

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . [T]he moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment.

. . . [R]eview of [a] trial court's decision to grant [a] motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012). "[O]nce the moving party has met its burden . . . the opposing party [to survive summary judgment] must present evidence that demonstrates the existence of some disputed factual issue." (Internal quotation marks omitted.) *Maltas* v. *Maltas*, 298 Conn. 354, 366, 2 A.3d 902 (2010). "[I]n determining whether any genuine issues of material fact exist, we must view the evidence in the light most favorable to the nonmoving party . . . ." *Dorreman* v. *Johnson*, 141 Conn. App. 91, 98, 60 A.3d 993 (2013).

In order to establish a case of fraud, as the majority points out, the plaintiffs must prove by clear and convincing evidence that "(1) . . . a false representation of fact was made; (2) . . . the party making the representation knew it to be false; (3) . . . the representation was made to induce action by the other party; and (4) . . . *the other party did so act to her detriment*." (Emphasis added; internal quotation marks omitted.) *Warner* v. *Brochendorff*, 136 Conn. App. 24, 33 n.9, 43 A.3d 785, cert. denied, 306 Conn. 902, 52 A.3d 728 (2012). In order to establish a case of negligent misrepresentation, the plaintiffs must prove that "(1) . . . the defendant made a misrepresentation of fact (2) . . . the defendant knew or should have known was false, and (3) . . . the plaintiff[s] *reasonably relied* on the misrepresentation, and [the plaintiffs] suffered pecuniary harm as a result." (Emphasis added; internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 134 Conn. App. 203, 211 n.4, 38 A.3d 215, cert. granted on other grounds, 304 Conn. 923, 41 A.3d 663 (2012). Like the majority, I focus solely on the elements of the plaintiffs' acting on the

defendant's false representations to their detriment and with reasonable reliance.

The defendant has met his burden by providing uncontroverted evidence that there was no genuine issue of material fact as to the plaintiffs' reliance on his actions. Both the 1993 complaint and the memorandum of decision from the 1993 action, attached to the defendant's motion for summary judgment, demonstrate that the plaintiffs did not reasonably rely on the defendant and were not induced to act to their detriment because they possessed information sufficient to remove Kenneth Stuart, Jr., in 1993 as fiduciary.

In its decision granting summary judgment, the court noted the plaintiffs' 1993 complaint requesting an injunction and a constructive trust, but the court went on to state that the 1993 action was specifically to "remove" Kenneth Stuart, Jr. This was incorrect. I agree with the majority that a request for an injunction and constructive trust in Superior Court is a proceeding different from a motion for removal in Probate Court. When viewing the two pleadings with respect to the plaintiffs' reliance claims, however, plenary review of the evidence and testimony shows that although they did not file a specific removal motion until 2002, the plaintiffs had information available and the intent to remove Kenneth Stuart, Jr., in 1993, before the defendant was hired. A genuine issue of material fact should not be determined solely on a matter of semantics, and although the plaintiffs did not file for removal formally with the Norwalk Probate Court until 2002, their testimony in this action and the prayer for relief in their 1993 complaint render their claims of reliance during the period of 1994 through 2002 untenable.

I turn first to the allegations and prayer for relief in the complaint of the 1993 action. The plaintiffs detailed

Kenneth Stuart, Jr.'s breach of fiduciary duties, fraudulent concealment of estate information and fraudulent reporting of inaccurate estate accountings. On the basis of these allegations, the complaint sought: "A temporary and permanent injunction preventing [Kenneth Stuart, Jr.] from spending, selling, conveying, giving, transferring, hypothecating, converting, encumbering or wasting assets . . . and preventing [Kenneth Stuart, Jr.] from spending, selling, conveying, giving, transferring, hypothecating, converting, encumbering or wasting assets of the Trust created by [the decedent] without the consent of the [plaintiffs]." The majority concludes that the prayer does not explicitly ask for Kenneth Stuart, Jr.'s removal, but that should not end the analysis. In order to properly analyze the plaintiffs' request, it is necessary to understand the effect the motion for removal would have had on Kenneth Stuart, Jr., had the plaintiffs succeeded with it. In August, 1991, the decedent executed the "Kenneth J. Stuart Living Trust," a revocable trust that permitted Kenneth Stuart, Jr., to serve as the sole trustee. The plaintiffs and Kenneth Stuart, Jr., are the sole beneficiaries of the trust. Also in August, 1991, the decedent executed a will that bequeathed his entire estate to the trust. The will named Kenneth Stuart, Jr., as the sole executor. In November, 1992, Kenneth Stuart, Jr., and the plaintiffs discussed placing the decedent's assets into a limited partnership in order to avoid tax liability, but the plaintiffs never agreed to the proposed partnership agreement. Later that same month, Kenneth Stuart, Jr., the decedent and the Norman Rockwell Museum of Stockbridge, Massachusetts, created Stuart & Sons Limited Partnership. The decedent and Kenneth Stuart, Jr., were appointed as general partners. When the decedent died, his partnership interest passed into his estate, which, pursuant to his will, passed into the trust. Thus, all of the decedent's assets were contained in the trust, with Kenneth

Stuart, Jr., as the sole trustee. Kenneth Stuart, Jr., had complete control over the decedent's assets and, therefore, the plaintiffs' action seeking an injunction preventing Kenneth Stuart, Jr., from "spending, selling, conveying, giving, transferring, hypothecating, converting, encumbering or wasting assets" from the trust, if successful, would have stripped Kenneth Stuart, Jr., of all power over the decedent's assets. A successful removal action would have similarly eliminated Kenneth Stuart, Jr.'s control of the decedent's assets. Thus it seems clear to me that, because the plaintiffs had sufficient information to file the 1993 action, which requested an effective removal of Kenneth Stuart, Jr., their knowledge of their brother's wrongdoing could not have been affected by the defendant's actions in the subsequent years.

Because the defendant has shown that the plaintiffs had sufficient information to remove Kenneth Stuart, Jr., in 1993, and therefore that the plaintiffs did not reasonably rely on the defendant as they claim, the burden then falls to the plaintiffs to show that there is a genuine issue as to reliance despite the defendant's evidence. See *Maltas* v. *Maltas*, supra, 298 Conn. 366. They fail to meet this burden. In his affidavit attached to the plaintiffs' objection to the defendant's motion for summary judgment, William Stuart stated that "as a result of my reliance of Freiberg's reports, I suffered pecuniary damages, as we delayed pursuing removal of Stuart Jr. . . . ." Neither he nor Jonathan Stuart supported their claim of reliance with further documentation or testimony. Rather, the plaintiffs contradicted their claim of reliance in their own depositions. The plaintiffs testified that their intent in requesting an injunction and a constructive trust in 1993 was to remove Kenneth Stuart, Jr., from power over the decedent's assets; they stated further that they did not know or read documents from the defendant at any time. The

majority concludes that this lack of contact is "of no legal significance"; see part I A of the majority opinion; but without such contact or documentation, the plaintiffs must rely on only their recollection of events during that time period to support their claim of reliance, and they both testified that, as they remembered, they intended to use information gathered by their own forensic accountant to remove Kenneth Stuart, Jr., in 1993. In his November, 2010 deposition, William Stuart stated that the facts from the forensic accountant's summary were "used in an attempt to remove [Kenneth Stuart, Jr.]—they were used in an unsuccessful attempt to remove him as executor." William Stuart stated further that he and his brother had hoped that facts from the forensic accountant's summary "would be capable of initiating the [1993] lawsuit and removing [Kenneth Stuart, Jr.] as executor. That was our hope." William Stuart stated that he had never met the defendant, did not believe that Jonathan Stuart had ever met the defendant and had only spoken with the defendant one time on the telephone. William Stuart consistently denied recognizing any of the defendant's financial documents shown to him at his deposition.

In his November, 2010 deposition, Jonathan Stuart stated: "I didn't rely on any documents. . . . I didn't look at documents. I don't look at documents." When asked whether he used facts from the forensic accountant hired before the 1993 action to remove Kenneth Stuart, Jr., as fiduciary, Jonathan Stuart answered, "[m]aybe," and when asked whether the facts contained in the forensic accountant's report were sufficient to remove Kenneth Stuart, Jr., as fiduciary, he stated, "[s]ure." Jonathan Stuart stated that there were "many reasons" why he and William Stuart tried to remove Kenneth Stuart, Jr., in the 1993 action and stated, "I would assume so," when asked whether Kenneth Stuart's spending prior to the 1993 action was sufficient,

in his mind, to remove him as fiduciary. Jonathan Stuart stated that he had never met the defendant and that he had never hired the defendant to act as his accountant. Jonathan Stuart did not even claim to know whether the defendant acted fraudulently, as, when asked whether the defendant concealed information from him, he responded: "How would I know if he concealed things?"

Whether the defendant acted properly during his time as an accountant for the estate and the extent of his involvement in Kenneth Stuart, Jr.'s fraudulent actions would be for a jury to decide, but the uncontroverted facts demonstrate that the plaintiffs could not reasonably have relied on the defendant or acted to their detriment during the period between 1994 and 2002. It is clear from their allegations in the 1993 complaint that the plaintiffs were aware of Kenneth Stuart, Jr.'s fraudulent behavior and that they intended to remove Kenneth Stuart, Jr., from power over the decedent's assets as a result of that awareness. The 1993 complaint demonstrates that the plaintiffs had sufficient information to remove Kenneth Stuart, Jr., before the defendant was hired in 1994 and at the time they initiated the 1993 action.

The plaintiffs have not satisfied their burden by providing any evidence to refute or clarify their testimony so as to contradict this conclusion. It was the defendant who provided the court with both the 1993 complaint and the court's decision in that case. The evidence provided by the plaintiffs in support of their claim of a genuine issue consists of a few lines in William Stuart's affidavit and a single account summary addressed to the "estate beneficiaries." "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse

claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Great Country Bank* v. *Pastore*, 241 Conn. 423, 435–36, 696 A.2d 1254 (1997). The plaintiffs, like the majority, focus solely on the fact that they did not file for removal formally with the Norwalk Probate Court until 2002, and although the majority states that the record shows where the plaintiffs "appeared to tolerate [Kenneth] Stuart, Jr., continuing in that role [as executor] for some period of time during the *Stuart* v. *Stuart* litigation," there are no facts raised by the plaintiffs to support such an inference. Rather, the record and the plaintiffs' own words indicate that the plaintiffs intended to remove Kenneth Stuart, Jr., from all positions of power and to initiate a lawsuit to recoup financial losses incurred as a result of Kenneth Stuart, Jr.'s fraudulent behavior.

Although the court was in error by stating that the plaintiffs sought to "remove" Kenneth Stuart, Jr., in their 1993 complaint, I nevertheless conclude that the court did not err in determining that there was no genuine issue as to either the plaintiffs' lack of reasonable reliance on the defendant or any actions to their detriment induced by the defendant during the period before they filed the petition for removal in the Probate Court.[1]

---

[1] The majority also finds that there is a genuine issue of reliance as to the plaintiffs' claim of accounting malpractice. See part I B of the majority opinion. To the extent that the majority reverses the court's judgment as to accounting malpractice on the basis of reliance, I disagree for the reasons stated herein.

## II

Because I would affirm the granting of summary judgment as to the fraud and negligent misrepresentation counts, I address the plaintiffs' claim on appeal that their motion for reargument as to these counts should have been granted.

In their July 27, 2011 motion, the plaintiffs challenged the court's determination that there was no genuine issue of material fact as to the plaintiffs' reliance on the defendant's actions and attached as exhibits both the 1993 Superior Court complaint from *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031 (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010), and the 2002 Probate Court motion to remove the fiduciary and dissolve the trust. The plaintiffs argued that the court misread the original complaint in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, to be seeking the removal of Kenneth Stuart, Jr., as fiduciary for the decedent's estate. On August 3, 2011, the court denied the motion to reargue, finding that the motion was without merit and that further oral argument was unnecessary.

"[I]n reviewing a court's ruling on a motion to . . . reargue . . . we ask only whether the court acted unreasonably or in clear abuse of its discretion." *Valentine* v. *LaBow*, 95 Conn. App. 436, 451, 897 A.2d 624, cert. denied, 280 Conn. 933, 909 A.2d 963 (2006). "When reviewing a decision for an abuse of discretion, every reasonable presumption should be given in favor of its correctness." (Internal quotation marks omitted.) Id. The purpose of reargument is to demonstrate to the court that a controlling decision or principle of law has been overlooked or that there has been a misapprehension of facts; it also may be used to address alleged

inconsistencies in the trial court's memorandum of decision. *Opoku* v. *Grant*, 63 Conn. App. 686, 692, 778 A.2d 981 (2001).

In its ruling denying the motion, the court noted that the plaintiffs "paraphrase the arguments they previously advanced in their unsuccessful attempt to defeat the defendant's motion for summary judgment." The motion seeking reargument did not alert the court to an overlooked decision or principle of law, nor did it address any alleged inconsistencies in the decision. The plaintiffs argue that in its decision, the court misapprehended the facts by reading the 1993 complaint to ask for Kenneth Stuart, Jr.'s removal as a fiduciary. As discussed in this dissent, although the court incorrectly stated that the 1993 complaint explicitly sought removal, the court correctly interpreted the 1993 complaint to be seeking remedies tantamount to removal. There was no material misapprehension of facts. Accordingly, there was no abuse of discretion in denying the motion for reargument.

I respectfully dissent in part.

