******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully disagree with the majority's conclusion that the claims of fraud, negligent misrepresentation, and accounting malpractice set forth in the complaint filed by the plaintiffs, William A. Stuart and Jonathan Stuart,[1] do not present material issues of fact for the jury. In my view, the majority is really questioning the reasonableness of the parties' claimed reliance on the professional advice of the defendant, Richard M. Freiberg. The majority states that "the plaintiffs did not present sufficient counterevidence to show how they were otherwise able to rely on a false statement or misrepresentation . . . ." We have previously stated, however, that the reasonableness of a reliance is a matter of fact for the trier. Further, the majority inserts its own opinion of causation although this court has repeatedly held that, in the absence of extraordinary circumstances, causation is a matter of fact for the trier. Therefore, I respectfully dissent from the majority opinion.

I agree with the majority's recitation of the facts. Therefore, I will not repeat the facts for the purposes of this opinion. I will insert additional facts only as needed as part of the discussion.

I

I disagree with the majority that the trial court appropriately applied the summary judgment standard to the facts of this case. "Pursuant to Practice Book § 17-49, the party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [A] party opposing [a motion for] summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with evidence disclosing the existence of such an issue. . . . On a motion by the defendant for summary judgment, the burden is on the defendant to negate each claim as framed by the complaint . . . . It necessarily follows that it is only [o]nce the defendant's burden in establishing his or her entitlement to summary judgment is met [that] the burden shifts to the plaintiff to show that a genuine issue of fact exists justifying a trial." (Citations omitted; internal quotation marks omitted.) *Iacurci* v. *Sax*, 313 Conn. 786, 808–809, 99 A.3d 1145 (2014). "[I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012).

Respectfully, in my view, both the trial court and the majority have failed to view the evidence regarding fraud, negligent misrepresentation and accounting malpractice in the light most favorable to the plaintiffs. The majority concludes that there is no issue of material fact regarding the fraud and negligent misrepresentation counts because there is no showing of reliance on the part of the plaintiffs. The majority states that "[a]side from William's affidavit, the plaintiffs do not direct our attention to any counterevidence outside of the pleadings that could support their essential element of reliance." (Emphasis omitted.) I respectfully disagree. In my view, the facts that one of the plaintiffs had a telephone call with the defendant in which financial matters were discussed and that the defendant forwarded financial statements to the plaintiffs, is sufficient to raise a genuine issue of material fact as to the fraud and negligent misrepresentation claims.

I further agree with the majority of the Appellate Court, which stated that "[u]nder these circumstances, it is of no legal significance that the plaintiffs had no direct contact with the defendant. In sum, the record available to the court, particularly Judge Adams' decision in *Stuart* v. *Stuart*, [Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031-S (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010)], provides sufficient counterbalance to the defendant's filings in support of his motion for summary judgment to render resolution of the issue of reliance to the adjudication of fact finders and not to summary disposition by the court short of trial." *Stuart* v. *Freiberg*, 142 Conn. App. 684, 702, 69 A.3d 320 (2013). I note, as did the Appellate Court, that Judge Adams' memorandum of decision in *Stuart* v. *Stuart*, supra, was submitted to the trial court in the present case by the defendant, as it was appended to his motion for summary judgment. *Stuart* v. *Freiberg*, supra, 699 n.13.

The Appellate Court further noted that "the court's detailed and fact-laden memorandum of decision in *Stuart* v. *Stuart*, supra, [37 Conn. L. Rptr.] 367, makes clear the court's finding that the defendant provided accounting assistance to [Kenneth] while that lengthy litigation was pending and that, during the litigation, improper acts were committed by [Kenneth] with the assistance of the defendant, to the detriment of the beneficiaries of [Stuart's] estate." *Stuart* v. *Freiberg*, supra, 142 Conn. App. 700. "For example, in its memorandum of decision, the court, *Adams, J.*, noted: '[Kenneth's] record keeping was haphazard at best. John Slade, an accountant hired by [Kenneth] to assist with the books and records of the [family trust] and partnership from early 1992 to 1994, told [Kenneth] that he had to be more organized in keeping records. . . . The

plaintiffs' expert, John [D.] Dempsey, a [certified public accountant], found that the lack of record keeping was notable and that he had never seen a case where the books were so incomplete and funds so commingled. . . . Dempsey also described the work of [the defendant] . . . who worked for [Kenneth] from 1994 to 2001, as designed to hide, rather than disclose the truth. . . . Furthermore, [Kenneth] failed to produce the annual accountings required by the [trust]. Although certain partial information was given out from time to time it was incomplete and unverified. The court was never shown a complete [t]rust accounting for any period of time.' . . . Elsewhere in its memorandum of decision the [trial] court noted: '[T]he regularity and extent that [Kenneth] directed the use of partnership funds for his personal benefit is staggering. This course of action was explicitly articulated by both [the defendant and Kenneth]. In a letter dated February 26, 1998, [the defendant] advised New Milford Savings Bank . . . that [Kenneth] received from [Stuart's estate, the trust, the partnership and others, certain] non taxable funds related to executive perks, deferred compensation and loans. . . . About two weeks later, [the defendant] elaborated: Basically all of [Kenneth's] living expenses are paid from the above referenced entities . . . and are charged or reclassified at the end of each year. These amounts have been in excess of $90,000 per annum.' " (Citation omitted.) Id., 700–701 n.14.

In addition, I am persuaded that William's affidavit, which was submitted in opposition to the motion for summary judgment, also raises a genuine issue of material fact that he relied on the financial advice from the defendant.[2] In my view, the content of this affidavit provides more than a sufficient basis to justify the denial of the motion for summary judgment on the three separate counts. A material issue of fact clearly exists regarding the fictitious credit of $490,755 (i.e., fraud), the two different versions of the accounting statements (i.e., fraud or at the very least negligent misrepresentation), and the commingling of personal and estate funds (i.e., malpractice). Certainly, when considering these facts in a light most favorable to the nonmoving party, the summary judgment motion must fail.

In addition, Dempsey submitted an affidavit in opposition to the motion for summary judgment, detailing aspects of the defendant's accounting practices that did not comply with professional standards.[3] In my opinion, Dempsey's affidavit also supports the plaintiffs' claim that he established a genuine issue of material fact sufficient to survive summary judgment.

The majority appears to rely on the issue of reliance for its conclusion regarding the accounting malpractice count, as it did in the fraud and negligent misrepresentation count. Specifically, the majority states that "the plaintiffs have not presented any arguments that would

allow us to reach a different result here from that already reached on the fraud and negligent misrepresentation counts." However, reliance or the reasonableness thereof has never been an element of a professional malpractice claim. Instead, in my view, the majority inserts its own opinion into an area that has classically been left for the jury—causation. I would therefore affirm the judgment of the Appellate Court on the ground that the affidavits and records in the present case clearly establish that a material issue of fact exists with regard to all three counts within the plaintiffs' complaint, namely, fraud, negligent misrepresentation and accounting malpractice.

The majority appears to discard William's affidavit as conclusory. In my view, however, William is entitled to state that he relied on the financial statements that were sent to him, if for no other reason than to establish the fact that something was being done regarding the estate, which lulled the plaintiffs to forbear seeking the ouster of the executor. It has long been established that the reliance, which is necessary to establish both negligent representation and fraud, may take the form of forbearance. See *Stewart* v. *Cendant Mobility Services Corp.*, 267 Conn. 96, 112, 837 A.2d 736 (2003).[4] Further, this court has held that forbearance need not be proven by direct evidence, but may be proven by circumstantial evidence. See *First Federal Savings & Loan Assn. of Rochester* v. *Charter Appraisal Co.*, 247 Conn. 597, 614, 724 A.2d 497 (1999). It appears that the majority discounts William's statement that he relied on both the financial statements and the telephone call by stating this could not possibly be true since William and Johnathan did not examine the financial statements. In my view, however, the majority's conclusion is really based on a finding that it was not reasonable for William to rely on the financial statement and rejecting that reliance out of hand.

We have stated, however, that the reasonableness of reliance is a question for the trier of fact. *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 352 n.6, 71 A.3d 480 (2013). "Although we conclude that no special relationship is required to state a claim of negligent misrepresentation, the plaintiff must allege and prove that the reliance on the misstatement was justified or reasonable. We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances." *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 579–80, 657 A.2d 212 (1995). Thus, in *Williams Ford, Inc.*, when the defendant made certain misstatements to the plaintiff we stated that: "[w]e believe that both of these arguments go to the issue of whether the reliance on the misstatements was justified rather than to the existence of a duty. . . . In making this determination, the fact finder certainly could take into account the casualness of the allegedly false state-

ments and the context in which they were made. Although the reliance upon casual misstatements might not be reasonable in a given case, we are not persuaded that the absence of a special relationship between the parties is justification for precluding a cause of action based on negligent misrepresentation in all cases involving casual misstatements." (Citations omitted.) Id. Further, in *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, supra, 352 n.6, when dealing with a motion to strike, we stated that "[t]he complaint does not expressly state that the plaintiff's reliance on [the individual defendant's] misrepresentations was reasonable, but, given [his] position with respect to [the corporate defendant], and the lack of any argument to the contrary . . . we read the pleadings to be inclusive of that element of the negligent misrepresentation tort. In any event, we note that the reasonableness of the plaintiff's reliance will be a question of fact for the trier." In effect, by stating that the matter of reliance is conclusory in the affidavit, the majority is foreclosing the plaintiffs from making allegations regarding an essential element of proof in their case—reliance. Instead, I would conclude that the reasonableness of the reliance is a question for the trier of fact, rather than summarily disposing of the case.

Furthermore, in his affidavit, William explained that "[a]s a result of [the defendant's] creation of the fictitious credit, the property known as 434–436 Hurlbutt Street was transferred out of the [e]state, and resulted in a direct monetary loss to me and Jonathan." William also averred that the defendant "began combining the transactions of all entities and [Kenneth] personally, such that we had to engage a forensic accountant at a cost to Jonathan and me of over $400,000, to untangle the web of deceit that [the defendant] had created." Thus, contrary to the majority's assertion, William's affidavit was not conclusory, but explained what actions the plaintiffs took as a result of the defendant's actions.

In view of the fact that I disagree with the majority regarding the sufficiency of the documentation to create an issue of fact, I must reach an issue which the majority, in view of its conclusions, did not need to address. Therefore, with regard to the second and third counts, negligent misrepresentation and accounting malpractice, I will now discuss my view that the defendant, although hired by Kenneth as executor of Stuart's estate, owed a legal duty to the plaintiffs as the estate's beneficiaries.[5]

## II

The majority concludes that "the plaintiffs did not present sufficient counterevidence to demonstrate that there existed a genuine issue of material fact with respect to their accounting malpractice count." I disagree and would conclude that the plaintiffs established

a prima facie case of professional negligence sufficient to defeat the defendant's motion for summary judgment as to that count.

As this court stated, in the context of attorney malpractice claims, in *Krawczyk* v. *Stingle*, 208 Conn. 239, 244, 543 A.2d 733 (1988), "[a]s a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services. A number of jurisdictions have recognized an exception to the general rule when the plaintiff can demonstrate that he or she was the intended or foreseeable beneficiary of the attorney's services." The same reasoning applies with equal force to an accountant hired by the executor of an estate. In *Krawczyk*, this court acknowledged the exception to the rule recognized in other states and noted that "[a]ccordingly, courts have held that the intended beneficiary has a cause of action against an attorney who failed to draft a will in conformity with a testator's wishes . . . . The question before us is whether such liability should be further expanded to encompass negligent delay in completing and furnishing estate planning documents for execution by the client." (Citations omitted.) Id., 245. This court seemed to accept, sub silencio, the fact that Connecticut would acknowledge the initial exception. This court then proceeded to indicate the factors that would be important in any consideration of expanding the exception. "Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy. . . . In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party. . . . Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability." (Citations omitted.) Id., 245–46. This court in *Krawczyk* declined to expand the extension because it held that the time constraint might conflict with the attorney's duty to properly represent his client. In other words, if he felt that he might be liable to the beneficiaries, the attorney, whom did not have all of the information that was needed to make a considered decision, might rush the testator into a decision that was not warranted. There is no time constraint issue presented in this case.

With these principles in mind, I turn to an analysis of the facts in the present case in comparison to the relevant principles of law. I note at the outset that a few states have already acknowledged that an action by beneficiaries of an estate or trust may lie against an accountant. See *Estate of Smith* v. *Underwood*, 127 N.C. App. 1, 5, 487 S.E.2d 807 (1997) (action by trust beneficiaries against accountant for breach of fiduciary duty); see also *Jewish Hospital* v. *Boatmen's National Bank*, 261 Ill. App. 3d 750, 766, 633 N.E.2d 1267 (1994)

(finding that accountant owed duty to remainder beneficiaries of decedent's estate, despite fact that beneficiaries were not clients of accountant). Further, other states have found attorneys for an estate liable to the beneficiaries. "It is the duty of a fiduciary of an estate to serve as representative of the entire estate. Such fiduciary, in the administration of an estate, owes a duty to beneficiaries to act in a manner which protects the beneficiaries' interests. We believe that this duty places the beneficiaries in privity with the executor." *Elam* v. *Hyatt Legal Services*, 44 Ohio St. 3d 175, 176, 541 N.E.2d 616 (1989); see also *Bucquet* v. *Livingston*, 57 Cal. App. 3d 914, 916–17, 129 Cal. Rptr. 514 (1976).

## A

### Intended Beneficiaries

The plaintiffs certainly have presented a material issue of fact regarding whether the plaintiffs were the intended or foreseeable beneficiaries of the defendant's actions. The evidence shows that the defendant was hired by the executor, paid by estate funds, had at least one conversation regarding financial statements with one of the plaintiffs, and forwarded the financial statements of the estate to the plaintiffs. Furthermore, it was established that the defendant knew that he was working on behalf of the estate, and he was also aware that the plaintiffs, along with Kenneth, were the remaining beneficiaries of the estate.

The preparation of accurate financial statements would have been a direct benefit to the estate and, therefore, to the plaintiffs. Accurate information would have allowed the plaintiffs to fully appreciate the extent of their distribution. According to the information set forth in the affidavits, the defendant produced inaccurate financial statements, and, in some instances, dual financial statements showing different figures. These documents served to deceive the beneficiaries and worked to Kenneth's advantage. The fact that the defendant was willing to talk to one of the plaintiffs and forwarded the financial statements to both of them indicates his knowledge that the statements were prepared for, and intended to benefit, the plaintiffs.

On the basis of the foregoing, I would conclude that the plaintiffs have established a genuine issue of material fact regarding whether they were the intended beneficiaries of the defendant's professional advice.

## B

### Foreseeability of Harm

The plaintiffs also established a genuine issue of material fact as to whether the harm to them was foreseeable. If the accountant presented two different financial statements for the same period of time, created a fictitious credit for the benefit of one beneficiary, and commingled estate funds with the personal funds of

one beneficiary, it certainly presents an issue of fact for the jury whether it was foreseeable that harm would be caused to the other two beneficiaries, both of whom were unaware of the fictitious account, commingling of funds and the two financial statements.

### C

### Proximity of Injury

Dempsey's affidavit clearly establishes a genuine issue of material fact that the defendant breached the standard of care. As stated previously in this opinion, Dempsey's affidavit states that: the accounting records kept by the defendant "fell short of the typical standard [Dempsey] would expect of a [c]ertified [p]ublic [a]ccountant"; the defendant "prepared two sets of consolidated financial statements for the same fiscal year"; several checks written to pay for Kenneth's personal expenses were not recorded by the defendant on the books of the estate or its related entities; the defendant had created a fictitious entry on the estate's books in which he gave Kenneth a credit of $490,755; the defendant's records were "designed to hide, rather than disclose the truth"; and there were significant "lynchpin documents" that were never produced, which precluded Dempsey from establishing additional damages. See footnote 3 of this dissenting opinion.

Further, William's affidavit establishes a question of fact as to the injury and its causal connection to the breach of the standard of care. As stated previously in this opinion, William's affidavit states that: the defendant created a fictitious credit in the amount of $490,755 on the books of the partnership despite the fact that there was no legitimate basis for such a credit; the defendant misrepresented the true state of the estate's assets and liabilities by creating this fictitious credit; "the property known as 434–436 Hurlbutt Street was transferred out of the [e]state," causing the plaintiffs a direct monetary loss; and the defendant combined the transactions of the estate and its related entities with Kenneth's personal finances such that the plaintiffs "had to engage a forensic accountant at a cost . . . of over $400,000 . . . ." See footnote 2 of this dissenting opinion.

On the basis of the foregoing, I would conclude that there is sufficient evidence to establish a genuine issue of material fact regarding all of the required elements of a professional malpractice claim. I note further that "[t]he issue of proximate causation is ordinarily a question of fact for the trier. . . . Conclusions of proximate cause are to be drawn by the jury and not by the court. . . . It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement, the question is one to be determined by the trier as a matter of fact." (Internal quotation marks

omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 558, 51 A.3d 367 (2012). In light of the affidavits submitted in the present matter, in my view, there is room for reasonable disagreement and the matter should be presented to the jury.

## D

### Preventing Future Harm

The malpractice of any professional, along with negligent misrepresentation, have been recognized as justifiable causes of action in Connecticut for decades. The purpose of allowing such causes of action is not only to restore the injured party, but also to provide notice to a class of defendants that similar conduct may be subject to civil penalties, in the hope of preventing such conduct in the future. The allowance of this type of cause of action will place accountants, and all professionals who work for estates, on notice that they must conduct their actions in an effort to represent all beneficiaries, not any one beneficiary in particular.

## E

### Burden on Accounting Profession by Imposing Liability

While the imposition of this type of claim might result in additional claims against accountants, it is the type of claim that can be covered by the accountant's malpractice insurance, which any accountant would normally carry in regard to the representation of his clients. While the number of claimants may increase, the actual liability may not change in a case, such as this one, where an accountant represents an estate. For instance, if the accountant made an error in preparing an estate tax return such that the estate had to pay $300,000 more in taxes than necessary, the accountant could be the subject of a civil action to recover the moneys brought by the executor of the estate. In a case such as this one, the beneficiaries would be allowed to join that action. If there were a recovery on behalf of the estate, however, there would be no additional recovery by the beneficiaries. Thus, there would be no additional burden imposed on the accountant.

In the present case, however, if the facts as alleged were proven, it would be evident that an accountant was working with an executor to the detriment of the beneficiaries. In such a case, the executor would probably not bring an action against the accountant. Therefore, the beneficiaries would have the ability to bring an action against the accountant to recoup the distributive share that they lost as the result of the accountant's negligence. The public policy of compensating victims through a tort complaint is, therefore, satisfied.

In light of these considerations, I would conclude that the public policy dictates that the accountant who represents an executor in the preparation of financial statements or tax returns is liable to the beneficiaries

of the estate.

### III

I would conclude that the plaintiffs raised genuine issues of material fact as to the claims of fraud, negligent misrepresentation, and accounting malpractice and would, accordingly, affirm the judgment of the Appellate Court. Therefore, I respectfully dissent.

[1] Like the majority, in the interest of simplicity, I refer to the plaintiffs and their elder brother, Kenneth J. Stuart, Jr., individually by first name and to their father, Kenneth J. Stuart, Sr., by the family surname. See footnote 5 of the majority opinion.

[2] This affidavit provided in relevant part: "5. [The defendant] was hired by Kenneth . . . when he was acting in the capacity of executor of [Stuart's] [e]state.

"6. Jonathan and I previously brought suit against [Kenneth], and proved that he illegally commingled funds of the [e]state, stole monies from the [e]state for his personal use, and unduly influenced [Stuart] when he was mentally incompetent.

"7. During the course of our litigation against [Kenneth], [the defendant] was the accountant for the [e]state and its related entities.

"8. [The defendant] regularly assisted [Kenneth] and his counsel in preparing accounting reports for the [e]state and its related entities.

"9. [The defendant] addressed his [e]state [a]ccounting reports to the 'beneficiaries of the [e]state of . . . Stuart' and sent them to Jonathan and me through [Kenneth's] counsel.

"10. [The defendant] also sent certain [e]state accounting reports to various third parties, which facilitated [Kenneth's] ability to continue to steal monies from the [e]state and its related entities.

"11. In at least one accounting report, [the defendant] prepared two different versions, submitting one to a third party to induce them to loan money to [Kenneth] and the [e]state entities, and providing the other copy to Jonathan and me through counsel.

"12. In one accounting report that he prepared, [the defendant] designated a payment to Smith College, which was for the benefit of [Kenneth's] daughter and not an [e]state expense, as an arbitration expense.

"13. In another accounting report that he prepared, [the defendant] designated the purchase of a Rolex watch for [Kenneth's] wife as a purchase of inventory, as if it had actually been an [e]state expense.

"14. [The defendant] created a fictitious credit in the amount of $490,755 on the books of [the partnership], despite that there was no legitimate basis for that credit.

"15. By creating the fictitious credit of $490,755, [the defendant] misrepresented the true state of the [e]state's assets and liabilities.

"16. As a result of [the defendant's] creation of the fictitious credit, the property known as 434–436 Hurlbutt Street was transferred out of the [e]state, and resulted in a direct monetary loss to me and Jonathan.

"17. I had at least one conversation with [the defendant] in which we discussed the accounting for the [e]state and its related entities.

"18. In a conversation with me, [the defendant] admitted that he was unable to determine the true value of the [e]state monies that [Kenneth] had spent on himself.

"19. [The defendant] prepared reports for the [e]state and its related entities, and I relied on those accounting reports. . . .

"22. As the accountant for . . . the [e]state [and its related] entities, [the defendant] began combining the transactions of all entities and [Kenneth] personally, such that we had to engage a forensic accountant at a cost to Jonathan and me of over $400,000, to untangle the web of deceit that [the defendant] had created.

"23. I relied on [the defendant], as a [c]ertified [p]ublic [a]ccountant, to provide accurate accounting information for the [e]state and its related entities.

"24. As a result of my reliance of [the defendant's] reports, I suffered pecuniary damages, as we delayed pursuing removal of [Kenneth] as [e]xecutor of the [e]state.

"25. Jonathan and I have suffered personal financial losses as a result of [the defendant's] actions, by both the reduction of the [e]state's assets and by the monies we expended to unravel the complex and deceitful accounting reports he had prepared."

[3] In his affidavit Dempsey averred as follows: "8. I found the accounting

records kept by [the defendant] for the [e]state fell short of the typical standard I would expect of a [c]ertified [p]ublic [a]ccountant. For example:

"a. The [d]efendant prepared two sets of consolidated financial statements for the same fiscal year (2000). Both were addressed to the beneficiaries of the [e]state. One set was delivered to [Kenneth's] bank in support of a loan application; the other was delivered several months later to the beneficiaries.

"b. The [d]efendant failed to account for all transactions recorded in the [partnership] checking account . . . I found that several checks written to pay [Kenneth's] personal expenses were not recorded by [the defendant] on the books of the [e]state entities.

"c. I found that the [d]efendant had created a fictitious entry on the [e]state's books in which he gave [Kenneth] a credit of $490,755, despite that there was no legitimate basis for that credit.

"9. I testified on October 21, 2003 that I believed [the defendant's] records to be designed to hide, rather than disclose the truth.

"10. In addition to the inadequate accounting, there were significant lynchpin documents that were never produced, which precluded me from establishing additional damages that I believe existed."

"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534, 51 A.3d 367 (2012). The majority places great emphasis on the operative complaint and its usage of the term reliance as opposed to the term causation. However, while the complaint may have been inartfully drawn, it can always be amended either prior to trial, or after trial to conform to the proof. Dempsey's affidavit, however, in my view, creates an issue of fact regarding accounting malpractice count. Since we rely on not only the pleadings, but affidavits and any other proof, I believe that an issue of fact has been created in this count. Indeed, William averred in his affidavit that "as a result of [the defendant's] creation of the fictitious credit, the property known as 434–436 Hurlbutt Street was transferred out of the [e]state, and resulted in a direct monetary loss to me and Jonathan." Further, Dempsey's mention of a $490,755 fictitious credit would further indicate a loss to the plaintiffs, and a causal connection to the accounting malpractice.

[4] The plaintiffs' complaint clearly contains a forbearance allegation. Specifically count one of the operative complaint explicitly alleges that "[t]he aforesaid representations were in fact, misrepresentations, and the plaintiffs relied on [the defendant's] misrepresentations as aforementioned, in that they, including without limitation, delayed pursuing the removal of [Kenneth] from his position as fiduciary of the [e]state . . . because they believed [the defendant's] statements to be true, and that they delayed pursuing their claims in Superior Court against [Kenneth] in reliance on [the defendant's] misrepresentations." This allegation was subsequently incorporated, by reference, in both the second and third counts of the operative complaint.

[5] The issue of duty is not relevant to the fraud count.