******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILLIAM A. STUART ET AL. *v.*
RICHARD M. FREIBERG
(SC 19208)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa, Robinson and
Vertefeuille, Js.

*Argued October 22, 2014—officially released May 19, 2015*

*James A. Fulton*, for the appellant (defendant).

*Sandra J. Akoury*, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. This certified appeal is the latest out-growth of a lengthy and bitter estate dispute between brothers. The defendant, Richard M. Freiberg, appeals, upon our grant of his petition for certification,[1] from the judgment of the Appellate Court reversing in part the summary judgment rendered in his favor by the trial court, *Tobin, J.*[2] See *Stuart* v. *Freiberg*, 142 Conn. App. 684, 686–87, 69 A.3d 320 (2013). On appeal, the defendant claims that the Appellate Court improperly concluded that there existed genuine issues of material fact as to the counts of fraud, negligent misrepresentation, and accounting malpractice that were pleaded in the operative complaint by the plaintiffs, William A. Stuart and Jonathan Stuart.[3] We agree and, accordingly, reverse the judgment of the Appellate Court in part.

The record reveals the following undisputed facts and procedural history.[4] The plaintiffs and their older brother, Kenneth J. Stuart, Jr., are the children of Kenneth J. Stuart, Sr.[5] In 1991, Stuart created a living trust and a will, with Kenneth named as trustee and executor. At the time, Stuart owned one half of a home in Wilton, approximately \$2 million in securities and cash, and a significant art collection that included several famous paintings by Norman Rockwell. Most of these assets were transferred into the living trust. Stuart's will instructed that, if his wife preceded him in death, upon his own death, the trust's principal was to be distributed equally between his three sons.

In 1992, Stuart lost his wife and he began to show signs of deteriorating physical and mental health. That summer, Kenneth contacted the plaintiffs and proposed moving Stuart's assets from the living trust into a family limited partnership, which, Kenneth claimed, would yield estate tax advantages. The plaintiffs objected to this proposal because, under the corresponding draft partnership agreements, Kenneth would have been granted a broad degree of control over the assets as a general partner, while the plaintiffs would have lacked such control as only limited partners.

Without the plaintiffs' knowledge, on November 4, 1992, Kenneth and Stuart created a limited partnership in which they were the sole general partners and the plaintiffs were not partners at all. Through a series of transactions executed the same day, virtually all of the living trust's assets were transferred into the limited partnership. As a net result, when Stuart died on February 17, 1993, Kenneth assumed exclusive control over valuable assets that the plaintiffs had expected to inherit promptly.

A saga of legal disputes began later in 1993, starting with the plaintiffs' request in Probate Court to have Kenneth removed as an estate fiduciary "immediately" because they doubted his "ability to carry out his . . .

role honestly and fairly." This removal attempt was unsuccessful.[6] "[A]lmost simultaneously," Kenneth told the plaintiffs about the limited partnership's existence.

The plaintiffs' misgivings deepened as the year pressed on. Pursuant to their request, the plaintiffs received a financial summary from Kenneth, dated November 19, 1993, that documented expenditures from the living trust during 1992. Upon reviewing the financial summary, the plaintiffs saw that Kenneth had misappropriated the trust's funds. This prompted the plaintiffs to file a complaint, dated December 17, 1993, in Superior Court that alleged Kenneth unduly influenced Stuart and also breached numerous fiduciary duties owed to them as estate beneficiaries. *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031-S (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010). Among the plaintiffs' more specific allegations in this original complaint were that, during 1992, Kenneth had used the trust's funds to: (1) make $607,480 in various disbursements, only $88,500 of which were spent on Stuart; (2) loan himself $83,267; and (3) purchase real estate for his personal benefit. The plaintiffs requested as their relief, inter alia, injunctions that would prohibit Kenneth from exercising any control over assets in the trust or the limited partnership without their consent.

By the middle of 1994, Kenneth engaged the defendant as a certified public accountant for the first time. The defendant's work grew over the years to include the preparation of various financial statements for Stuart's estate and its related entities, but he was eventually replaced in September, 2001. Throughout the defendant's seven year engagement, the plaintiffs' civil action against Kenneth remained unresolved—as did the plaintiffs' accompanying requests for injunctive relief. Only in 2002, following an attempt to have some of the Norman Rockwell paintings sold,[7] did the plaintiffs finally obtain an injunction that barred Kenneth from exercising control over the assets related to Stuart's estate.

In 2004, more than one decade after the plaintiffs first initiated their civil action against Kenneth, the trial court, *Adams*, *J.*, issued its posttrial memorandum of decision in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367.[8] In that case, Judge Adams found that Kenneth exercised undue influence over Stuart in creating the limited partnership and declared it, and any asset transfers thereto, null and void. Id., 376. Further, Judge Adams found that from at least 1992 through 2001, Kenneth had breached his fiduciary duties by utilizing assets in the trust and the limited partnership for his personal benefit. Id., 379. In lamenting the difficulty of quantifying Kenneth's misdeeds, Judge Adams observed that the plaintiffs' forensic accounting expert had testified

at trial that the defendant's work product was "designed to hide, rather than disclose the truth." Id., 378.

At another point, however, Judge Adams commented on the plaintiffs' "languorous" approach to the misappropriations, stating: "[The plaintiffs] were aware of [Kenneth's] spending what they considered to be [Stuart's] money on himself early on. . . . Yet while a suit was filed in 1993, no further action was taken to stop the spending until an injunction proceeding in 2002. Indeed, William asked [Kenneth] why he did not put all the money in one account and spend it on himself out of that account . . . . While not amounting to a waiver, it was some basis for [Kenneth] to believe [that the plaintiffs] did not object strenuously to his using the money for basic living expenses." (Citation omitted.) Id., 389. Ultimately, Judge Adams ruled against Kenneth and awarded monetary damages to Stuart's estate in the amount of $2,375,528.38—inclusive of $180,000 to cover the forensic accounting expert's fees.[9] Id., 393.

On April 8, 2004, the plaintiffs commenced the present action against the defendant. The operative complaint[10] contains the following three counts that are relevant to this appeal: (1) fraud; (2) negligent misrepresentation; and (3) accounting malpractice. See footnote 3 of this opinion. In essence, the plaintiffs alleged that the defendant prepared inaccurate and misleading financial statements that facilitated the misappropriation of estate funds by Kenneth. For each count, the plaintiffs alleged, more specifically, that they suffered financial harm because they "relied on [the defendant's] misrepresentations . . . in that they . . . [1] delayed pursuing the removal of [Kenneth] from his [fiduciary] position . . . because they believed [the defendant's] statements to be true, and . . . [2] delayed pursuing their claims in Superior Court against [Kenneth] . . . ."

The defendant subsequently moved for summary judgment, asserting that no genuine issue of material fact existed as to any count. In particular, the defendant contended that the plaintiffs had not actually relied on any of his financial statements. In support of his motion, the defendant submitted an authenticated copy of the plaintiffs' original complaint in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, as well as authenticated excerpts from the depositions of William and Jonathan in the present case. Jonathan testified at his deposition that, by the middle of 1993, he had determined that Kenneth misappropriated hundreds of thousands of dollars from Stuart's estate. Jonathan further testified that, between 1994 and 2001, he had periodically received financial statements that the defendant had prepared. When asked to identify which of the defendant's financial statements he had relied on detrimentally, Jonathan testified that he "didn't rely on any documents," "didn't look at documents," and "didn't need documents to tell [him that he] lost money." For his part, William similarly

testified that, prior to initiating *Stuart* v. *Stuart*, supra, in 1993, he had already believed that Kenneth misappropriated hundreds of thousands of dollars from Stuart's estate. Moreover, William testified that he was not familiar with any of the defendant's financial statements, did not recall receiving them, and "couldn't have relied on" them.

In their objection to the defendant's motion for summary judgment, the plaintiffs asserted that genuine issues of material fact existed as to each count. In particular, they disputed the defendant's argument that they did not rely on his statements. In support of that objection, the plaintiffs submitted an affidavit from William in which he succinctly states that he relied on the defendant's inaccurate financial statements, and that this reliance resulted in a delay of the efforts to remove Kenneth as a fiduciary. The plaintiffs did not submit an affidavit by Jonathan in support of the objection. Although the plaintiffs submitted other affidavits, they did not speak to the plaintiffs' manner of reliance.

On July 15, 2011, the trial court granted the defendant's motion for summary judgment. The trial court acknowledged that the parties disputed some facts, such as whether the defendant had prepared false financial statements, but determined that the plaintiffs' claims were fatally undermined by their failure to produce any evidence that could support "their allegations of actual reliance upon any materials produced by the defendant." As to the counts of fraud and negligent misrepresentation, the trial court reviewed the undisputed evidence and concluded that it was "impossible to see how the plaintiffs could have relied" on the defendant's allegedly false financial statements in the manner they described, because "the plaintiffs had already instituted an action in the Superior Court to remove Kenneth . . . as a fiduciary of the estate before the defendant was hired to do accounting work for the estate." As to the count of accounting malpractice, the trial court similarly reasoned that the plaintiffs could not conceivably "demonstrate that the defendant's conduct caused their supposed injuries." The trial court therefore determined that the plaintiffs had failed to raise a genuine issue of material fact with respect to each count and granted the defendant's motion for summary judgment. The trial court subsequently denied the plaintiffs' motion for reargument.

The plaintiffs appealed from the trial court's judgment to the Appellate Court, claiming that they had presented sufficient evidence to raise genuine issues of material fact with respect to each count. *Stuart* v. *Freiberg*, supra, 142 Conn. App. 706–707. In a divided decision, the Appellate Court reversed the trial court's award of summary judgment on the counts of the complaint that are relevant to this certified appeal. Id., 686–87; see also footnote 3 of this opinion. Following

a review of the record, the Appellate Court first determined that the plaintiffs did not seek to remove Kenneth as executor and trustee by commencing *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, in 1993; rather, the plaintiffs sought different forms of injunctive relief and yet, "for whatever reasons," "appeared to tolerate" Kenneth continuing in his fiduciary roles "for some period of time during the *Stuart* v. *Stuart* [supra] litigation . . . ." *Stuart* v. *Freiberg*, supra, 701. Moving on to the issue of reliance, which was integral to the counts of fraud and negligent misrepresentation, the Appellate Court held that whether the plaintiffs "were misled into believing the financial reports prepared by the defendant and provided during the [*Stuart* v. *Stuart*, supra] litigation . . . [remained] to be determined in a fact-based hearing." *Stuart* v. *Freiberg*, supra, 701. As for the issue of causation, which was integral to the accounting malpractice count, the Appellate Court drew a close comparison to reliance and then concluded that it too was "not amenable to summary judgment because it [was] fact bound" and the material facts were in dispute. Id., 706. Accordingly, the Appellate Court reversed in part the trial court's award of summary judgment and remanded the case for further proceedings.[11] Id., 710. This certified appeal followed. See footnote 1 of this opinion.

On appeal, the defendant claims that the plaintiffs, in objecting to summary judgment, did not present sufficient counterevidence of the following: (1) their reliance on his financial statements, as was necessary in this particular case to demonstrate that a genuine issue of material fact existed on the counts of fraud and negligent misrepresentation; and (2) a causal connection between his financial statements and their alleged injuries, as was necessary in this particular case to demonstrate that a genuine issue of material fact existed on the count of accounting malpractice.[12] Thus, the defendant contends that the Appellate Court improperly reversed in part the trial court's grant of his motion for summary judgment. We agree, and address each of the defendant's claims in turn.

We begin by setting forth the appropriate standard of review. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine

issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the plaintiff's motion for summary judgment is plenary." (Internal quotation marks omitted.) *DiPietro* v. *Farmington Sports Arena, LLC*, 306 Conn. 107, 116, 49 A.3d 951 (2012).

I

FRAUD AND NEGLIGENT MISREPRESENTATION

Before we examine the dovetailing legal issues for the plaintiffs' counts of fraud and negligent misrepresentation, we first observe the essential elements for each cause of action.

To establish liability for fraud, a plaintiff must be able to show by clear and convincing evidence that: "(1) a false representation was made [by the defendant] as a statement of fact; (2) the statement was untrue and known to be so by [the defendant]; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Nazami* v. *Patrons Mutual Ins. Co.*, 280 Conn. 619, 628, 910 A.2d 209 (2006); see *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 819, 955 A.2d 15 (2008) (standard of proof for claim of common-law fraud is clear and convincing evidence).

To establish liability for negligent misrepresentation, a plaintiff must be able to demonstrate by a preponderance of the evidence: "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 626; see *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 819 (ordinary standard of proof for civil actions is preponderance of evidence); *Cohen* v. *Roll-A-Cover, LLC*, 131 Conn. App. 443, 449 n.8, 27 A.3d 1, cert. denied, 303 Conn. 95, 33 A.3d 739 (2011) (standard of proof for claim of negligent misrepresentation is preponderance of evidence).

A

Summary Judgment, Essential Elements, and Materiality

The plaintiffs raise a threshold claim that it was improper for the trial court to address the defendant's arguments regarding reliance that are now central to this appeal. Specifically, the plaintiffs contend that, following a determination that there were genuine disputes over material facts bearing on other essential elements of the counts of fraud and negligent misrepresentation—for example, whether the defendant's financial statements were false—"the trial court should have

simply ceased its analysis and denied summary judgment . . . ." Thus, the plaintiffs argue that it was improper for the trial court to consider, in succession, whether any genuine issue of material fact existed as to the essential element of reliance. We disagree.

The fundamental purpose of summary judgment is preventing unnecessary trials. See *Orenstein* v. *Old Buckingham Corp.*, 205 Conn. 572, 574, 534 A.2d 1172 (1987) ("[s]ummary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial"). If a plaintiff is unable to present sufficient evidence in support of an essential element of his cause of action at trial, he cannot prevail as a matter of law. See, e.g., *Santopietro* v. *New Haven*, 239 Conn. 207, 225, 682 A.2d 106 (1996) (directed verdict appropriate if evidence is " 'so weak' " that "the jury could not reasonably and legally have found that the plaintiff had proved each of [the essential] elements"); *Furstein* v. *Hill*, 218 Conn. 610, 627, 590 A.2d 939 (1991) (directed verdict appropriate "when the plaintiff has failed to produce any evidence of an essential element of his cause of action").

To avert these types of ill-fated cases from advancing to trial, following adequate time for discovery, a plaintiff may properly be called upon at the summary judgment stage to demonstrate that he possesses sufficient counterevidence to raise a genuine issue of material fact as to any, or even all, of the essential elements of his cause of action. See, e.g., *Robinson* v. *Cianfarani*, 314 Conn. 521, 524–25, 107 A.3d 375 (2014) (" '[a] material fact . . . [is] a fact which will make a difference in the result of the case' "); *Rusco Industries, Inc.* v. *Hartford Housing Authority*, 168 Conn. 1, 6, 357 A.2d 484 (1975) (test for granting summary judgment "is resolved by applying to the established facts the same criteria as used in determining whether a party would be entitled to a directed verdict on the same facts"); see also *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304, 320, 77 A.3d 726 (2013) ("[w]hen documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue" [internal quotation marks omitted]).

If a defendant's well supported motion for summary judgment shows that there is no genuine factual dispute as to multiple essential elements of a plaintiff's cause of action, such that none of them reasonably could be resolved in the plaintiff's favor at trial, the viability of that plaintiff's case is not improved if he only responds with sufficient counterevidence to call *some* of those essential elements back into question. Put differently, by raising a genuine issue of fact as to only *some* of the essential elements under attack, the plaintiff has

not altered the potential outcome of his case. See *Santopietro* v. *New Haven*, supra, 239 Conn. 225. It logically follows that, in evaluating a defendant's motion for summary judgment, a trial court's task does not necessarily end upon its finding that a genuine factual dispute exists as to *one* or *some* essential elements of a plaintiff's cause of action. If a defendant has substantively addressed additional essential elements in support of his motion, so too should the trial court in determining whether summary judgment is appropriate.

These summary judgment principles are perhaps so readily accepted as a matter of law in Connecticut that our independent research failed to reveal a prior decision in which this court had the occasion to discuss them so extensively. The principles have, however, been embraced implicitly in decisions of this court; see, e.g., *Marinos* v. *Poirot*, 308 Conn. 706, 710, 715–16, 66 A.3d 860 (2013) (defendants "advanced a number of arguments" against count alleging unfair trade practice, and plaintiff's failure to produce counterevidence of ascertainable loss alone permitted summary judgment); *DiPietro* v. *Farmington Sports Arena, LLC*, supra, 306 Conn. 124 (plaintiff presented counterevidence that defect was cause of injury in premises liability action, but failure also to present counterevidence of defendants' notice of defect permitted summary judgment); and have been stated more expressly in decisions of the Appellate Court. See, e.g., *Tyler* v. *Tyler*, 151 Conn. App. 98, 105, 93 A.3d 1179 (2014) ("[s]ummary judgment is appropriate where no genuine issue of material fact exists, and the defendant is entitled to judgment as a matter of law, with respect to any one element that the plaintiff is required to prove in order to prevail at trial").

We also note that the logic of this approach has ample support in federal law, which we find persuasive in interpreting our summary judgment rules of practice. See *Mac's Car City, Inc.* v. *American National Bank*, 205 Conn. 255, 260, 532 A.2d 1302 (1987) ("[a]lthough the federal rules of civil procedure and the federal court's interpretations thereon are not binding upon the state courts, this court has repeatedly noted the substantial similarity between the federal and Connecticut summary judgment procedures and has often relied upon federal rules and case law for guidance"). For example, in *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the United States Supreme Court reasoned that "a complete failure of proof concerning *an* essential element of the non-moving party's case necessarily renders all other facts immaterial" for the purpose of summary judgment. (Emphasis added.)

Thus, returning to the present case, even if some material facts were genuinely in dispute that would bear on the preliminary essential elements of the plaintiffs' fraud and negligent misrepresentation counts, the trial

court was still required to continue its summary judgment analysis by examining the parties' arguments and proffered evidence concerning other essential elements of those counts. Accordingly, with respect to the counts of fraud and negligent misrepresentation, it was proper for the trial court to consider whether any genuine issue of material fact existed as to the plaintiffs' essential element of reliance—which is now a focal point on appeal.

B

Reliance

We turn to the defendant's claim that the Appellate Court improperly determined that the plaintiffs' counts of fraud and negligent misrepresentation were not suitable for summary judgment. The defendant begins with the observation that the plaintiffs would need to show actual reliance on a false statement or misrepresentation of fact to prevail on their counts of fraud and negligent misrepresentation. He further observes that the plaintiffs' operative complaint alleges that they relied on "accounting reports containing false information" by delaying their "removal claims and Superior Court claims against [Kenneth]." Hence, the defendant argues that he made a prima facie case for summary judgment by presenting the trial court with authenticated excerpts from the plaintiffs' respective depositions in which they testified to not seeing, reading, or relying on the defendant's allegedly false financial statements. The defendant contends that, in an attempt to create a genuine issue of material fact that would preclude summary judgment on the two counts in question, the plaintiffs submitted one piece of pertinent counterevidence—William's affidavit—that made three sentences' worth of false and conclusory averments about the plaintiffs purported reliance. See footnote 14 of this opinion. Moreover, the defendant accurately notes that the Appellate Court majority did not discuss any of this evidence or counterevidence in reaching its conclusions as to the counts of fraud and negligent misrepresentation. See *Stuart* v. *Freiberg*, supra, 142 Conn. App. 697–703.

In response, the plaintiffs do not dispute that the defendant accurately depicted their deposition testimony. Rather, they argue, "the simple fact that [they] testified that they did not 'look' at the reports prepared by the defendant does not prove that they placed no reliance on the defendant." The plaintiffs maintain that there are "methods of reliance other than a basic review of documents," and emphasize that William's affidavit "clearly speaks to the issue of reliance," "clearly state[s] the type of reliance he made," "is clear on its face," and "is a clear statement of facts . . . ." We disagree, and conclude that the plaintiffs did not provide an adequate evidentiary foundation to demonstrate the existence of a genuine issue of material fact with respect

to their claimed reliance.

Our review of the pleadings, affidavits, and other proof available at the summary judgment stage firmly convinces us that the plaintiffs' claim of reliance is untenable as a matter of law. This determination flows from the following progression of events: (1) the plaintiffs filed an operative complaint that alleged that they relied on the defendant's false and misleading financial statements; (2) the defendant presented deposition testimony in which the plaintiffs admitted that they never read or reviewed his allegedly false financial statements, thus making out a prima facie case for summary judgment; (3) the plaintiffs did not attempt to controvert their deposition testimony; and (4) the plaintiffs did not present sufficient counterevidence to show how they were otherwise able to rely on a false statement or misrepresentation of fact made by the defendant.

Contrary to the plaintiffs' protestations, William's affidavit does not substantively illustrate any alternative manner in which the plaintiffs relied on a false statement or misrepresentation of fact that the defendant made. In his affidavit, William first averred that the defendant "prepared reports for the [e]state and its related entities," and that he "relied on those accounting reports." William further averred that he "relied on [the defendant], as a [c]ertified [p]ublic [a]ccountant, to provide accurate accounting information for the [e]state and its related entities." Lastly, William averred that, "[a]s a result of [his] reliance [on the defendant's] reports, [he] suffered pecuniary damages, as [the plaintiffs] delayed pursuing removal of [Kenneth] as [e]xecutor of the [e]state."[13]

These averments, which are referenced by the plaintiffs in support of their argument that the Appellate Court properly determined that the fraud and negligent misrepresentation counts were not suitable for summary judgment, closely replicate portions of the pleadings. See *Buell Industries, Inc.* v. *Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002) ("[t]he genuine issue aspect of summary judgment requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred" [internal quotation marks omitted]). Moreover, these averments are conclusory, and therefore inadequate to defeat a summary judgment motion, because they do not explain how or why the plaintiffs relied on the allegedly false contents of the defendant's financial statements without, by their own admission, having seen them.[14] See Black's Law Dictionary (8th Ed. 2004) (defining conclusory as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based"); see also *Hoskins* v. *Titan Value Equities Group, Inc.*, 252 Conn. 789, 793–94, 749 A.2d 1144 (2000) ("[a] con-

clusory assertion . . . does not constitute evidence sufficient to establish the existence of a disputed material fact for purposes of a motion for summary judgment").

Without *actual* reliance, reasonable reliance cannot possibly exist.[15] In this regard, the dissent charitably attempts to provide illustrative details and gap-fillers that the plaintiffs did not supply themselves. To begin, the dissent draws considerable attention to the many wrongdoings of Kenneth, as well as the allegedly fictitious entries in, and versions of, certain financial statements that the defendant prepared. While this dual inventory may be emotionally appealing, it first speaks to the wrong person (i.e., Kenneth), and then to the wrong legal element (i.e., the presence of false or misleading statements of fact). When the dissent does turn to the pertinent legal element, reliance, it posits that "William is entitled to state that he relied on the financial statements that were sent to him, if for no other reason than to establish the fact that something was being done regarding the estate, which lulled the plaintiffs to forbear seeking the ouster of the executor." The dissent does not acknowledge, however, that William testified at his deposition that he was not familiar with any of the defendant's financial statements, did not recall receiving them, and "couldn't have relied on" them. These specific admissions must control over the conclusory averments about reliance in the affidavit. See *Hoskins* v. *Titan Value Equities Group, Inc.*, supra, 252 Conn. 793–94.

Aside from William's affidavit, the plaintiffs do not direct our attention to *any* counterevidence outside of the pleadings that could support their essential element of reliance.[16] We therefore determine that, as a matter of law, the plaintiffs did not demonstrate that a genuine issue of material fact existed as to their claimed reliance on a false statement or misrepresentation of fact made by the defendant. *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 628. Accordingly, we conclude that the Appellate Court improperly reversed the trial court's rendering of summary judgment in favor of the defendant on the counts of fraud and negligent misrepresentation.[17]

## II

### ACCOUNTING MALPRACTICE

We next turn to the defendant's claim that the Appellate Court improperly determined that the plaintiffs' count of accounting malpractice was not suitable for summary judgment. Specifically, the defendant argues, inter alia, that the plaintiffs' accounting malpractice count repeated the same allegation of reliance that appeared within the preceding fraud and negligent misrepresentation counts. That is, with regard to the accounting malpractice count, the plaintiffs again

alleged "that they relied on information provided to them by [the defendant], and as a result thereof, they (1) delayed seeking to remove [Kenneth] as a fiduciary and (2) delayed pursuing claims against him in Superior Court." Because the plaintiffs chose to present their accounting malpractice count in this manner, the defendant argues that it too cannot succeed, for "[w]ithout such reliance, the plaintiffs cannot demonstrate that the defendant's conduct caused their supposed injuries."

In response, the plaintiffs do not advance any argument with regard to causation. Problematically, the plaintiffs do not seem to recognize that *causation*, and not reliance, is an essential element of a professional malpractice claim. Indeed, the plaintiffs—who are represented by counsel—have not even attempted to draw a comparison between these two legal concepts. We therefore agree with the defendant, and conclude that the plaintiffs did not present sufficient counterevidence to demonstrate that there existed a genuine issue of material fact with respect to their accounting malpractice count.

To establish liability for professional malpractice, a plaintiff must be able to show the following: (1) a duty to conform to a professional standard of care for the plaintiff's protection; (2) a deviation from that standard of care; (3) injury; and (4) a causal connection between the deviation and the claimed injury. See, e.g., *Grimm* v. *Fox*, 303 Conn. 322, 329, 33 A.3d 205 (2012) (legal malpractice); *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 125 n.26, 998 A.2d 730 (2010) (medical malpractice).

The essential element of causation has two components. The first component, causation in fact, requires us to determine whether the injury would have occurred but for the defendant's conduct. *Winn* v. *Posades*, 281 Conn. 50, 56, 913 A.2d 407 (2007). The second component, proximate causation, requires us to determine whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. Id. That is, there must be "an unbroken sequence of events that tied [the plaintiff's] injuries to the [defendant's conduct]. . . . This causal connection must be based upon more than conjecture and surmise." (Internal quotation marks omitted.) Id., 56–57; see also *Gordon* v. *Glass*, 66 Conn. App. 852, 856, 785 A.2d 1220 (2001) ("[n]o matter how negligent a party may have been, if his negligent act bears no [demonstrable] relation to the injury, it is not actionable"), cert. denied, 259 Conn. 909, 789 A.2d 994 (2002).

A review of the operative complaint confirms that the plaintiffs tailored their accounting malpractice pleadings to the concept of reliance, rather than the applicable concept of causation. Moreover, on appeal, the plaintiffs continue to focus exclusively on reliance, and have not made any discernable attempt to compare

the legal concepts of reliance and causation. Contrary to the dissent's approach, in our view, if the plaintiffs are unable or unwilling to muster an argument that would advance an essential element of their professional malpractice claim, this court should not independently undertake that task on their behalf.

We have already determined, by way of analyzing the fraud and negligent misrepresentation counts, that the plaintiffs did not present sufficient counterevidence to demonstrate that a genuine issue of material fact existed as to their claimed reliance on the misinformation that was allegedly contained in the defendant's financial statements. See part I B of this opinion. The same type of claimed reliance formed the basis for the plaintiffs' accounting malpractice count, and the plaintiffs have not presented any arguments that would allow us to reach a different result here from that already reached on the fraud and negligent misrepresentation counts. Accordingly, we conclude that the Appellate Court improperly reversed the trial court's rendering of summary judgment in favor of the defendant on the count of accounting malpractice.

The judgment of the Appellate Court is reversed with respect to the counts of fraud, negligent misrepresentation, and accounting malpractice, and the case is remanded to that court with direction to affirm the judgment of the trial court on those counts.

In this opinion ROGERS, C. J., and PALMER, ZARELLA, ESPINOSA and VERTEFEUILLE, Js., concurred.

[1] We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the trial court should not have [rendered] summary judgment on counts one through three of the plaintiffs' complaint because there existed genuine issues of material fact?" *Stuart* v. *Freiberg*, 310 Conn. 921, 922, 77 A.3d 142 (2013).

[2] Hereinafter, all references to the trial court are to Judge Tobin unless otherwise indicated.

[3] The Appellate Court concluded that there were no genuine issues of material fact with respect to the fourth count of the operative complaint, which alleged a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. *Stuart* v. *Freiberg*, supra, 142 Conn. App. 708–10. Thus, with respect to the fourth count only, the Appellate Court affirmed the trial court's award of summary judgment in favor of the defendant. Id., 710. This aspect of the Appellate Court's judgment is not at issue in this appeal. See footnote 1 of this opinion.

[4] Certain relevant background facts are derived from a memorandum of decision that was issued by the trial court, *Adams, J.*, in a related proceeding, of which the Appellate Court took judicial notice in the present case. See *Stuart* v. *Freiberg*, supra, 142 Conn. App. 687 n.3, citing *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031-S (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010).

[5] In the interest of simplicity, we refer to Kenneth J. Stuart, Sr., by his surname and to Kenneth J. Stuart, Jr., William A. Stuart, and Jonathan Stuart individually by their first names. We also refer to William and Jonathan collectively as the plaintiffs.

[6] In the present action, it appears that the plaintiffs were not entirely forthcoming about the 1993 probate proceeding, either with the trial court or the Appellate Court. For example, in a motion to reargue filed with the trial court after the award of summary judgment, the plaintiffs stated that they "did not seek [Kenneth's] removal as fiduciary until February 12, 2002,

which relief was sought in the . . . Probate Court." Likewise, in their brief to the Appellate Court, the plaintiffs stated "the first time [they] sought to remove [Kenneth] as [a] fiduciary . . . was in 2002." Such statements may have frustrated the courts as they attempted to fully establish the timeline for the foundational disputes between the plaintiffs and Kenneth. See *Stuart* v. *Freiberg*, supra, 142 Conn. App. 701 (concluding that trial court "had no evidence . . . that the plaintiffs had sought to remove [Kenneth] as a fiduciary in 1993").

Some frustration persists in the present appeal because the plaintiffs now only vaguely acknowledge the 1993 probate proceeding—without providing any express references to specific dates in their brief or any supporting Probate Court filings in their appendix. The plaintiffs do, however: (1) provide a supporting citation to *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031-S (June 28, 2004) (37 Conn. L. Rptr. 367), aff'd, 112 Conn. App. 160, 962 A.2d 842 (2009), rev'd in part, 297 Conn. 26, 996 A.2d 259 (2010), which mentions that Kenneth first told them about the limited partnership in August, 1993; (2) state that the revelation by Kenneth was almost simultaneous to their initial, unsuccessful attempt to remove him as a fiduciary in Probate Court; and (3) state that, from 1994 through 2001, they had no removal proceedings pending against Kenneth in any court. The defendant, for his part, does not dispute any aspect of these belated admissions.

[7] This attempt to auction the Norman Rockwell paintings led to a separate contest in the Federal District Court in the District of Connecticut over their rightful ownership, as various publishing interests unsuccessfully claimed to have proper title to them. See *Stuart & Sons*, *L.P.* v. *Curtis Publishing Co.*, 456 F. Supp. 2d 336, 341–42, 349 (D. Conn. 2006).

[8] In the present action, the Appellate Court remarked that the record "provides no explicit reason for the passage of more than a decade between the filing of the 1993 complaint and the [issuance of Judge Adams'] memorandum of decision [in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367]." *Stuart* v. *Freiberg*, supra, 142 Conn. App. 689 n.4. Citing to a subsequent memorandum of decision on a postjudgment motion; see *Stuart* v. *Stuart*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0193031-S (July 6, 2009); the Appellate Court stated that Kenneth filed a bankruptcy petition "at some point during the . . . litigation [in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367]," and hypothesized that this filing had caused an automatic stay of the proceedings pursuant to the United States Bankruptcy Code. *Stuart* v. *Freiberg*, supra, 689 n.4.

Our independent research has revealed, however, that Kenneth did not file for bankruptcy until October 6, 2005—more than one year after Judge Adams rendered the judgment in *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367. It follows that this bankruptcy filing does not explain why *Stuart* v. *Stuart*, supra, lay dormant for such a prolonged period after the plaintiffs filed their original complaint.

[9] The subsequent history of *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, does not bear on the present appeal. See, e.g., *Stuart* v. *Stuart*, 297 Conn. 26, 28, 996 A.2d 259 (2010) (addressing proper standard of proof for statutory theft claims).

[10] Prior versions of the complaint spawned various claims of defective pleadings. See *Stuart* v. *Freiberg*, 102 Conn. App. 857, 858–59, 927 A.2d 343 (2007) (trial court improperly granted motion to strike all counts of complaint and remanding for further proceedings); *Stuart* v. *Freiberg*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-04-0200508-S (July 9, 2008) (granting defendant's subsequent motion to strike all counts of complaint again). The parties eventually proceeded with the plaintiffs' operative complaint dated July 23, 2008.

[11] Chief Judge DiPentima dissented in part, concluding that the trial court properly granted the defendant's motion for summary judgment because the uncontroverted evidence sufficiently demonstrated that there were no genuine issues of material fact concerning reliance or causation. *Stuart* v. *Freiberg*, supra, 142 Conn. App. 718 and n.1. Although she agreed with the majority's determination that the plaintiffs did not seek to *remove* Kenneth from his fiduciary roles by way of *Stuart* v. *Stuart*, supra, 37 Conn. L. Rptr. 367, Chief Judge DiPentima added that this was merely a "matter of semantics" and that the plaintiffs were nonetheless already seeking to strip Kenneth of his estate related powers before the defendant was hired as an accountant in 1994. *Stuart* v. *Freiberg*, supra, 713–15. Pointing specifically to the defendant's evidence proffered in support of his motion for summary judgment, Chief Judge DiPentima reasoned that the plaintiffs' claims of

detrimental reliance were "untenable" because they were both admittedly well aware of Kenneth's fraudulent activities months before the defendant became involved. Id., 713–717. Chief Judge DiPentima concluded, therefore, that the defendant made out a prima facie case for summary judgment and that the plaintiffs thereafter failed to provide any substantive counterevidence regarding their alleged reliance. Id., 715.

[12] With respect to the count of accounting malpractice, the defendant also argues that he did not owe the plaintiffs a professional duty of care because, inter alia, they were not his clients. Because we conclude that the plaintiffs did not present sufficient counterevidence regarding the issue of causation and, therefore, could not prevail on their count of accounting malpractice, we need not address the defendant's alternative arguments regarding a lack of duty.

[13] In an apparent effort to identify an oral statement on which he may have relied, William also averred to having one telephone call with the defendant, which, as best as he could recall, took place in 1997. In this conversation, the defendant told William that he was incapable of tracking the estate funds that Kenneth spent on himself. We are simply unable to conceive how the plaintiffs' fraud or negligent misrepresentation counts are supported by the defendant's open admission that he was *not* tracking personal spending from the estate related funds by Kenneth—either standing alone, or in conjunction with the alleged misinformation in the financial statements. See 2 F. Harper et al., Torts (3d Ed. 2006) § 7.13, pp. 548–49 ("where the recipient knows the true facts that are misrepresented or for any reason does not believe the misrepresentation, he cannot be found to rely on it" [footnotes omitted]). Similarly, the dissent has not proffered an explanation as to how anything the defendant relayed during this telephone call could serve as the prerequisite false statement or misrepresentation of fact.

[14] Because we conclude that William's averments were insubstantial and conclusory, we need not address the defendant's argument that they should be disregarded under the sham affidavit doctrine, which has not been adopted by this court but is frequently employed in the federal courts. See, e.g., *Moll* v. *Telesector Resources Group, Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) ("[t]he sham issue of fact doctrine prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony" [emphasis omitted; internal quotation marks omitted]).

We note that there is Connecticut appellate precedent holding that, if a witness submits an affidavit that is merely inconsistent with his prior deposition testimony, "such an inconsistency is not ordinarily a ground for precluding the witness' testimony entirely." *DiPietro* v. *Farmington Sports Arena, LLC*, 123 Conn. App. 583, 617, 2 A.3d 963 (2010), rev'd on other grounds, 306 Conn. 107, 49 A.3d 951 (2012); see also id. ("[w]e see no reason for a different rule to prevail in a summary judgment proceeding, particularly given the fact that in such a proceeding the evidence is to be viewed in a light most favorable to the nonmoving party"). Such precedent, however, does not relieve a party who is opposing summary judgment of the duty to offer nonconclusory evidence that establishes the existence of a genuine issue of material fact.

[15] Having determined that there is no genuine issue of material fact presented as to the plaintiffs' claimed reliance, with respect to the count of negligent misrepresentation only, we need not go on to speculate whether any manner of actual reliance would have been reasonable under the circumstances—which undisputedly show that the plaintiffs believed that Kenneth had misappropriated hundreds of thousands of dollars from their father's estate *before* he hired the defendant to provide accounting services. See *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 626 (essential element of negligent misrepresentation is reasonable reliance); *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 580, 657 A.2d 212 (1995) (reasonableness is normally question of fact); but see 37 Am. Jur. 2d 283, Fraud and Deceit § 239 (2013) ("[i]f, on the facts alleged in the complaint, no reasonable jury could find that the plaintiff's reliance was reasonable, the defendants are entitled to judgment as a matter of law").

[16] The plaintiffs, perhaps in an attempt to develop a new theory of reliance that would not be thwarted by their deposition testimony or conclusory averments, have further argued on appeal that their failure to demonstrate that they ever absorbed the false or misleading contents of the defendant's financial statements should not be dispositive of their causes of action. Specifically, the plaintiffs have adopted the position that they relied on the

defendant as an accountant in a much more general and abstract sense to protect their assets.

The plaintiffs' position is not persuasive for three reasons. First, though we do not hold that a claim of fraud or negligent misrepresentation always requires reliance on false or misleading documents, a plain reading of the trial court record shows that, in this case, the plaintiffs were dedicated to exactly such a theory. Cf. *Nazami* v. *Patrons Mutual Ins. Co.*, supra, 280 Conn. 629 ("[a]lthough we are mindful that our jurisprudence requires us to interpret pleadings broadly, we must construe them reasonably to contain all that they mean but not in such a way so as to 'strain the bounds of rational comprehension' "). Second, as we have highlighted, claims of fraud and negligent misrepresentation must be tethered to a false statement or misrepresentation of fact. Id., 626–28. The defendant's mere existence as an accountant does not, in some metaphysical sense, amount to a false statement or misrepresentation of fact. Third, even assuming, arguendo, that the plaintiffs' substituted theory of reliance could suffice, they did not present any nonconclusory evidence to substantiate it at the summary judgment stage. See *Hoskins* v. *Titan Value Equities Group, Inc.*, supra, 252 Conn. 793–94; see also *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App. 162, 170, 604 A.2d 1339 ("[m]ere statements of legal conclusions . . . and bald assertions, without more, are insufficient to raise a genuine issue of material fact capable of defeating summary judgment" [citation omitted]), aff'd, 224 Conn. 240, 618 A.2d 506 (1992).

[17] As previously noted, our conclusions ultimately render it unnecessary for us to address whether the defendant might have owed the plaintiffs a duty of care under the particular circumstances of this case. See footnote 12 of this opinion. The dissent, however, does reach this question for both the negligent misrepresentation and accounting malpractice counts.

We pause here to note that, even if our own conclusions *did* make it necessary to consider duty, the final outcome would be the same because the plaintiffs have effectively abandoned their duty related arguments. On appeal to this court, the plaintiffs argue that the defendant owed them a duty of care because they were the intended beneficiaries of his accounting work. This court, however, has not yet extended the intended beneficiaries doctrine to cases involving accountants—and the plaintiffs did not deem it worthwhile to offer a legal basis for doing so. After the plaintiffs presumed that we would implement this doctrine and, thereby, expand the potential scope of liability for accountants indefinitely, they then explained how the doctrine should apply to the facts of the present case by providing exactly one page of briefing and zero case analysis. Given this scant briefing, we hold that the claim is abandoned. See *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 711, 900 A.2d 498 (2006) ("failure to brief a crucial underlying premise precludes further review of [a] claim, which we deem abandoned").

The dissent, however, devotes approximately seven pages of its opinion to explaining why Connecticut should adopt the intended beneficiaries doctrine in cases involving accountants and, further, why the doctrine should be availing in this particular case. See part II of the dissenting opinion. Under the current circumstances, we are not similarly inclined. See *Citibank, N.A.* v. *Lindland*, 310 Conn. 147, 165, 75 A.3d 651 (2013) ("We repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." [Internal quotation marks omitted.]).